## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Anmarie Calgaro, | |
| Plaintiff, | Court File No. _____ |
| vs. | **VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTION** |
| St. Louis County; Linnea Mirsch, individually and in her official capacity as Interim Director of St. Louis County Public Health and Human Services; Fairview Health Services, a Minnesota nonprofit corporation; Park Nicollet Health Services, a nonprofit corporation; St. Louis County School District; Michael Johnson, individually and in his official capacity as Principal of the Cherry School, St. Louis County School District; and J.D.K., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Anmarie Calgaro for her Complaint alleges as follows:

## INTRODUCTION

As a parent and mother, Anmarie Calgaro seeks to have this Court affirm her parental rights over her minor children. Minnesota common law allows for the emancipation of minor children. However, while the law provides no distinct process for emancipation, there is no process for a parent

to protect their fundamental parental rights to make decisions concerning the care, custody and control of their children.

Under Minnesota Statute § 144.341, Minnesota's "emancipation law" for medical services, Ms. Calgaro has no statutory or common law cause of action to (1) challenge Defendant St. Louis County Public Health and Human Service's eligibility determination to pay for and/or approve payment of J.D.K.'s medical services at Park Nicollet and Fairview without parental consent, nor (2) to challenge Defendants Park Nicollet's and Fairview's determination of emancipation of J.D.K. to provide medical services without parental consent. Meanwhile, as J.D.K.'s mother, she is denied access to his medical records. Likewise, there is no statutory or common law cause of action for Ms. Calgaro to fully or partially regain her parental rights over her minor child.

In addition, based upon an attorney's opinion letter regarding emancipation, St. Louis County School District officials have refused her access to common school district records, including class assignments, grades, and the like of her minor child J.D.K. The letter of emancipation J.D.K. obtained from a legal aid service agency is not a court order. The School District provided Ms. Calgaro no notice or hearing prior to in terminating her parental rights regarding J.D.K.'s education nor a hearing or process afterwards to regain her parental rights over her minor child.

Meanwhile, her minor child J.D.K. received, and continues to receive, major elective medical services provided by Park Nicollet — and paid by St. Louis County – for a sex change without her consent or court order of emancipation. Similarly, Fairview prescribes narcotics to J.D.K. without her consent and without a court order. As with the St. Louis School District, Park Nicollet and Fairview Health Services did not provide Ms. Calgaro notice or a hearing that resulted in the loss of her parental rights.

Ms. Calgaro seeks declaratory and injunctive relief and damages under 42 U.S.C. § 1983 for the loss of her right to due process which directly affected her parental rights over her minor child. She seeks further relief necessary to prevent the Defendants from offering any additional services to her minor children without parental consent until she has had an opportunity in state court to petition to restore all or part of her parental rights before an emancipation is adjudicated before a court of law.

Finally, she demands that the Defendants provide her medical records, educational records, and similar records of her minor child J.D.K. and prevent the Defendants from refusing to provide the same records of her minor children until legal processes described above are followed. Attorney fees for the prosecution of this action are also demanded.

## JURISIDICTION

1.      The U.S. District Court has federal issue jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 42 U.S.C. § 1983.

2.      42 U.S.C. § 1983 is a federal statute authorizing private persons to bring civil rights lawsuits against defendants who operate under state law and violate federal legal rights.

## PARTIES

**Plaintiff:**

3.      Anmarie Calgaro is a resident of St. Louis County and of the State of Minnesota. Ms. Calgaro is the biological mother of her minor child, 17 year old son J.D.K. Ms. Calgaro has four additional minor children: J.D.K. born on July 6, 1999; J.J.K. born on December 22, 2005; J.J.C. born on July 4, 2009; and a step-daughter M.R.C. born on October 10, 2003. As a parent, she makes decisions regarding her minor children's care, custody and management. Ms. Calgaro has not relinquished any of her parental rights over her minor children.

**Defendants:**

4.      St. Louis County is a political subdivision of the State of Minnesota. The County and its officials are responsible for creating, adopting, approving, ratifying, and enforcing policies, customs, practices, or

procedures (or lack of procedures), which includes the lack of notice or hearing to retain or restore the parental rights of Ms. Calgaro either before or after a decision the County or County officials made concluding J.D.K, Ms. Calgaro's minor child, was emancipated. The County provided financial aid, and/or approval thereof, to J.D.K. for living or medical expenses or both.

5.      The St. Louis County's policies, customs, practices, or procedures (or lack of procedures), acting under the color of state law, were the moving force behind the constitutional violations asserted in this Complaint.

6.      St. Louis County Public Health and Human Services Department ("Department of Public Health") is a county agency which provides services in the areas of Adults, Children & Families, Disabilities, Elderly, Financial Assistance and Public Health. Under the facts of this case, St. Louis County provided to the minor child of Ms. Calgaro, J.D.K., funds and/or approved funding for medical services and other living expenses. As a county which provides social services to minor children, it is responsible for adhering to its policies, state law and federal law. The Department of Health and its officials are responsible for creating, adopting, approving, ratifying, and enforcing policies, customs, practices, or procedures (or lack of procedures), which includes the lack of notice or hearing to retain or restore the parental rights of Ms. Calgaro either before or after a decision the Department of Health officials made concluding J.D.K, Ms. Calgaro's minor child, was emancipated.

The Department of Health provided financial aid, and/or approval thereof, to J.D.K. for living or medical expenses or both.

7.    The Department of Public Health's policies, customs, practices, or procedures (or lack of procedures) were the moving force behind the constitutional violations asserted in this Complaint.

8.    Defendant Linnea Mirsch is the interim director of the St. Louis County Health and Human Services Department. The director is the final decision and policy maker for the Department.

9.    Ms. Mirsch is an agent, representative, or employee of the Department of Health. As such, she is acting under the color of state law and is being sued in her individual and official capacity as the director of the Department of Health.

10.   Park Nicollet Health Services ("Park Nicollet") is a Minnesota non-profit corporation which provides medical services to the members of the public. It receives state funding to provide medical services to the public. In Minneapolis, Park Nicollet Minneapolis has a Gender Services Clinic. At this clinic, Park Nicollet provides medical services to change sex identity. As a medical service provider, Park Nicollet is responsible for adhering to its policies, state law and federal law. Park Nicollet and its officials are responsible for creating, adopting, approving, ratifying, and enforcing policies, customs, practices, or procedures (or lack of procedures), which

includes the lack of notice or hearing to retain or restore the parental rights of Ms. Calgaro either before or after a decision Park Nicollet officials made concluding J.D.K, Ms. Calgaro's minor child, was emancipated under Minnesota Statute § 144.341. Park Nicollet provided medical services to J.D.K. without the consent or knowledge of Ms. Calgaro.

11.    Park Nicollet's policies, customs, practices, or procedures (or lack of procedures), acting under the color of state law, were the moving force behind the constitutional violations asserted in this Complaint.

12.    Fairview Health Services ("Fairview") is a Minnesota non-profit corporation which provides medical services to the members of the public. Fairview receives state funding for services provided to the public. In Hibbing, Fairview has a hospital known as Fairview Range Hospital. At the Range Hospital, Park Nicollet provides medical services to the public. As a medical service provider, Park Nicollet is responsible for adhering to its policies, state law and federal law. Fairview and its officials are responsible for creating, adopting, approving, ratifying, and enforcing policies, customs, practices, or procedures (or lack of procedures), which includes the lack of notice or hearing to retain or restore the parental rights of Ms. Calgaro either before or after a decision Fairview officials made concluding J.D.K, Ms. Calgaro's minor child, was emancipated under Minnesota Statute § 144.341.

Fairview provided medical services to J.D.K. without the consent or knowledge of Ms. Calgaro.

13.     Fairview's policies, customs, practices, or procedures (or lack of procedures), acting under the color of state law, were the moving force behind the constitutional violations asserted in this Complaint.

14.     St. Louis County School District is a Minnesota school district which includes J.D.K. as a student enrolled at Cherry School in post secondary educational opportunities. The School District is a governmental entity and receives state funding. The School Board is the final decision and policy maker for the School District. The School District and its officials are responsible for creating, adopting, approving, ratifying, and enforcing policies, customs, practices, or procedures (or lack of procedures), which includes the lack of notice or hearing to retain or restore the parental rights of Ms. Calgaro either before or after a decision School District officials made concluding J.D.K, Ms. Calgaro's minor child, was emancipated. The School District provided educational services to J.D.K., refused to provide Ms. Calgaro with district documents regarding J.D.K.'s education and refused to provide her an opportunity to participate in J.D.K.'s educational opportunities.

15.    The School District's policies, customs, practices, or procedures (or lack of procedures), acting under the color of state law, were the moving force behind the constitutional violations asserted in this Complaint.

16.    Michael Johnson is the principal at Cherry School within the St. Louis County School District. As principal, Mr. Johnson is the final decision- and policy maker directly affecting the school, including how to implement district-wide policies for Cherry School.

17.    Mr. Johnson is an agent, representative, or employee of the School District. As such, he is acting under the color of state law and is being sued in his individual and official capacity as the principal of Cherry School.

18.    J.D.K. is a 17 year old son of Ms. Calgaro and a resident of St. Louis County, State of Minnesota. J.D.K. is an interested party as it relates to the allegations asserted in this Complaint.

## BACKGROUND FACTS

I.    **J.D.K. is the biological child of Ms. Calgaro and remains a minor under Minnesota law.**

19.    Ms. Calgaro is the biological mother and parent of J.D.K.

20.    J.D.K. is Ms. Calgaro's child.

21.    Ms. Calgaro is also the mother and parent of additional minor children, born after J.D.K.

22.    Ms. Calgaro brings this lawsuit on behalf of her parental rights regarding these children as well.

23.    J.D.K. was born on July 6, 1999.

24.    Park Nicollet's and Fairview's determination of emancipation was based on the government's willingness to pay for the medical services via Defendant St. Louis County's determination that J.D.K. was emancipated and was eligible for such benefits.

25.    There is no parental cause of action under Minnesota statute or common law to challenge St. Louis County's, Park Nicollet's and Fairview's determinations which led to the government-paid medical services being provided to J.D.K. without parental consent.

26.    The Minnesota statute allowing the medical service provider to determine emancipation does not provide a cause of action for a parent to bring a lawsuit to restore full or partial parental rights.

27.    Although Minnesota common law recognizes a minor child's right to petition for emancipation, there is no Minnesota common law cause of action for a parent to bring in court to restore full or partial parental rights once a child is emancipated for medical services without a court order.

28.    Specifically, Minnesota Statute § 144.341, enacted in 1971, authorizes medical service providers to determine whether a minor child such as J.D.K. is emancipated without a court order:

> Notwithstanding any other provision of law, any minor who is living separate and apart from parents or legal guardian, whether with or without the consent of a parent or guardian and regardless of the duration of such separate residence, and who is managing personal financial affairs, regardless of the source or extent of the minor's income, may give effective consent to personal medical, dental, mental and other health services, and the consent of no other person is required.

29.     There is no corresponding right of a parent to regain or contest the medical service providers' determination of the minor's consent to medical services.

30.     According to the statutes, Park Nicollet and Fairview in determining J.D.K.'s emancipation took into account under "regardless of the source or extent of minor's income" that St. Louis County had determined J.D.K's eligibility for government-paid benefits.

31.     Moreover, if the medical service provider had refused treating J.D.K. as emancipated, J.D.K. was entitled under Minnesota common law to proceed with a petition for emancipation.

32.     Conversely, even though Ms. Calgaro as a mother objects to J.D.K.'s life-changing operation and narcotic drug prescriptions, Ms. Calgaro has no legal rights under Minnesota Statute § 144.341 to bring a cause of action against the medical service providers Park Nicollet and Fairview to restore her full or partial parental rights.

33.     Further, Minnesota common law has never recognized a cause of action for a parent to sue in district court to restore full or partial parental rights after emancipation.

34.     The medical service providers do not provide parental notice and opportunity to be heard prior to or after the emancipation determination terminating parental rights.

35.     There is no parental corollary under Minnesota common law for the minor child's petition for a court order of emancipation.

36.     A parent under Minnesota common law has no right to bring a lawsuit after a medical service provider has determined a minor child is "emancipated" under Minnesota Statute § 144.341 without a court order.

37.     Since Minnesota Statute § 144.341 does not authorize a parent to bring such a lawsuit, parents have no legal cause of action in court to challenge a medical service provider's determination of "emancipation" under Minnesota Statute § 144.341.

38.     J.D.K. who is a minor child has never obtained a court order of emancipation.

39.     J.D.K has never been involved in Child In Need of Protection or Services (CHIPS) petition court proceedings, foster placement court proceedings, child protection court proceedings nor child custody court proceedings.

40.     Meanwhile, Minnesota courts recognize that J.D.K. as a minor child is not emancipated until a state court decides the minor child J.D.K. is emancipated.

41.     Minnesota Statute § 645.451 defines that an individual is an emancipated adult at age 18.

42.     Therefore, under Minnesota law, J.D.K. will be emancipated on July 6, 2017.

43.     Ms. Calgaro's other minor children will reach the age of emancipation later.

44.     Pursuant to a paternity order dated April 14, 2008, Ms. Calgaro has sole physical custody and joint legal custody of J.D.K. (Cty. of Benton v. Justin Gerald Karl, et. al., Ct. File. No. 05-FA-07-3058, Findings of Fact, Concl. of Law, Or. and Jdgmt, Benton Cty. Dist. Ct. (Apr. 14, 2008)).

45.     J.D.K.'s father, Justin Karl, also has joint legal custody. Although Ms. Calgaro and Karl are divorced, that has not interfered with their communication regarding the welfare of their son J.D.K. Notably, Mr. Karl has been informed about the instant litigation and the claims asserted and has consented to Ms. Calgaro's lawsuit.

II. **Federal courts have recognized that parents have a fundamental right to the care, custody and control of their children.**

46.   As a parent, Ms. Calgaro has a fundamental right to make decisions concerning the care, custody and control of her children.

47.   In *Slaven v. Engstrom*, 710 F.3d 772, 779 (8th Cir. 2013), quoting *Troxel v. Granville*, 530 U.S. 57,66 (2000) (plurality opinion), the Eighth Circuit wrote, "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."

48.   The United States Supreme Court in *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) wrote, "We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."

49.   The United States Court of Appeals for the Eighth Circuit in *King v. Olmstead County*, 117 F.3d 1065, 1067 (8th Cir. 1997) wrote, "We have recognized a right to familial relations, which includes the liberty interest of parents in the custody, care, and management of their children."

50.   Ms. Calgaro has always offered a home to J.D.K. She has also communicated with J.D.K. about how he is always welcome in their home.

51.   Ms. Calgaro has always made efforts to ensure a connection between her and J.D.K.

52.   Ms. Calgaro has never willingly or implicitly given up control or custody of J.D.K.

53.   In 2015, J.D.K. moved in with his father and then moved out. Although J.D.K. refused to come back home, Ms. Calgaro has never surrendered her parental rights over her son's actions or in any other way attempted to sever their relationship as mother and child.

54.   St. Louis County, over Ms. Calgaro's objections, has provided and/or approved moneys to J.D.K. to allow him to live apart from his mother Ms. Calgaro.

55.   Meanwhile, Ms. Calgaro, at all times, has offered to J.D.K. to live in her home.

### III.   A legal aid clinic provides J.D.K. with a "letter of emancipation," but fails to investigate the veracity of the allegations asserted.

#### Name change efforts of J.D.K. highlight the lack of a distinct process in emancipation law.

56.   During this period, J.D.K. succeeded in obtaining legal advice from Mid-Minnesota Legal Aid Clinic that he is emancipated without a court order.

57.   The lawyer's "To Whom It May Concern" letter does not accurately reflect the relationship between J.D.K. and Ms. Calgaro.

58.   The letter reflects only what J.D.K. stated were "his" facts.

59.     The Legal Aid Clinic did not contact Ms. Calgaro to investigate, question, confirm or affirm the alleged "facts" asserted by J.D.K. about their relationship.

60.     There was no district court hearing regarding any "factual" allegations asserted in the letter regarding Ms. Calgaro.

61.     There was no administrative hearing regarding any "factual" allegations asserted in the letter regarding Ms. Calgaro.

62.     A district court did not issue a court order stating that J.D.K. was emancipated.

63.     There was no district court hearing that adjudicated J.D.K. as emancipated.

64.     There was no administrative order that adjudicated J.D.K. as emancipated.

65.     There was no administrative hearing that adjudicated J.D.K. as emancipated.

66.     Attached hereto as Exhibit A is a copy of the Mid-Minnesota Legal Aid Clinic letter which states that J.D.K. is emancipated without a court order.

67.     Exhibit A has a filing date of October 8, 2015 in Stearns County district court.

68.    The filing is in regard to a hearing held on January 20, 2016, wherein J.D.K. tried to change his name to E.J.K., a female name.

69.    The order denying the attempted name change was issued on April 15, 2016 and is attached as Exhibit B.

70.    In the April 15, 2016 order, the district court noted that J.D.K. had earlier attempted to change his name in Stearns County.

71.    The court in that earlier preceding denied J.D.K.'s request noting that:

>    the Petitioner failed to comply with the statute authorizing change of name in Minnesota, which requires an application for change of name of a minor child be brought in the name of that child by the parent or guardian. Minn. Stat. §259.10.

72.    In the April 15, 2016 order, the district court stated that "a legal issue exists as to whether the juvenile Petitioner herein has a legal basis to assert emancipation, and if so, how that would affect Petitioner's entitlement to bring an action as a juvenile for a change of name in the State of Minnesota." Exhibit B.

73.    The district court stated that based upon the record before it finding:

- the lack of a parent or guardian bringing the Application on behalf of the juvenile;

- the lack of any Minnesota trial court adjudication relative to emancipation;

- the lack of proper notice upon the parents of the juvenile Petitioner;

- among other reasons.

74.    The procedural jurisdictional defects would not allow the court to resolve J.D.K.'s application for a name change and dismissed it without prejudice. Exhibit B.

75.    Ms. Calgaro was not present at the hearing. She did not, as the order reflected, get notice of the hearing. See Exhibit B.

76.    Meanwhile, Ms. Calgaro has made repeated attempts to retain or regain her parental rights regarding J.D.K. She has repeatedly asked for J.D.K.'s school records from defendant St. Louis School District officials, including the Cherry School principal(s), but they refused her access to his records and refused to communicate with her regarding matters affecting her son.

77.    Ms. Calgaro has made repeated attempts to retain or regain her parental rights regarding J.D.K. with the Defendants St. Louis County and St. Louis County Public Health and Human Services Department. Both officials from these Defendants have refused to provide her with any information regarding J.D.K. and in fact, have refuted further attempts by her to speak with County officials.

78.     Ms. Calgaro has made repeated attempts to retain or regain her parental rights with officials defendants Fairview Health Services and Park Nicollet Health Services to retain or to regain her parental rights regarding J.D.K. They have refused and refuted any attempts by Ms. Calgaro to obtain any information regarding medical services being provided to J.D.K.

79.     Likewise, Ms. Calgaro sought legal counsel advice from private attorneys about processes or procedures available to maintain, regain, or restore her parental rights in full or in part; however, multiple counsel identified that there is no distinct process in Minnesota to assert her rights as it pertained to maintaining, regaining, or restoring parental rights against the emancipation of her minor child under the circumstances described.

### IV.     In Minnesota, procedural due process is afforded to parents regarding children on matters from marital dissolution proceedings to child protection proceedings.

80.     Minnesota has a strong legal tradition of protecting parental rights.

81.     For instance, in the context of marital dissolution, paternity, and child protection, Minnesota provides parents due process – notice and an opportunity to be heard – prior to or after terminating parental rights.

82.     Moreover, procedural due process rights relating to parental rights are statutorily codified in the contexts of marital dissolution, paternity, and child protection.

83.   Parents in the contexts of marital dissolution, paternity and child protection receive statutorily-required notice and opportunity to be heard in court prior to or after parental rights are terminated.

84.   Minnesota Statute § 518.09, et seq., requires notice and hearing, that is due process, relating to parental rights as part of a marital dissolution proceeding.

85.   Minnesota Statute § 257.57 requires notice and hearing, that is due process, relating to parental rights as part of a paternity proceeding.

86.   Minnesota Statute § 260C.141 requires notice and hearing, that is due process, relating to parental rights as part of a child protection proceeding.

**V.   Minors may obtain medical services, including sex change procedures, based on a health service provider's determination of emancipation without notice or hearing regarding the affected parental rights.**

87.   Minnesota Statute § 144.341, enacted in 1971, authorizes medical service providers to determine whether a minor child such as J.D.K. is emancipated without a court order:

**144.341 LIVING APART FROM PARENTS AND MANAGING FINANCIAL AFFAIRS.**

Notwithstanding any other provision of law, *any minor* who is living separate and apart from parents or legal guardian, whether with or without the consent of a parent or guardian and regardless of the duration of such separate

> residence, and who is managing personal financial affairs, regardless of the source or extent of the minor's income, *may give effective consent* to personal medical, dental, mental and other health services, and the consent of no other person is required.

(Emphasis added).

88. There are no rules promulgated by the state or any other agency regarding the implementation of Minnesota Statute § 144.341.

89. Under § 144.341, there is no provision providing for a process or procedure to give notice to the minor's parent or parents before or after "effective consent" is determined, regarding their protected right to the care, custody, and control of their child.

90. Under § 144.341, there is no provision providing for a process or procedure to provide the minor's parent or parents a hearing, before or after "effective consent" is determined, regarding their protected right to the care, custody, and control of their child.

**VI.   There is no distinct process to challenge, retain or restore parental rights after an emancipation determination under Minnesota Statute § 144.341 concerning medical services or under common law regarding all matters for which a minor's emancipation determination is used.**

91. Procedural due process rights relating to parental rights after a minor child's emancipation for medical services under Minnesota Statute § 144.341 are not statutorily codified.

21

92.   Minnesota common law does not recognize a parental cause of action to restore partial or full parental rights in an emancipation context.

93.   Notably, the Minnesota judicial website recognizes and states that there is no "specifically defined process" for a minor to become emancipated:

> Minnesota Statutes define who is a minor and who is an adult at MN Statutes § 645.451.  Generally, being "emancipated" means that a **minor has the same legal responsibilities as an adult**. <u>Minnesota Statutes do not specifically define a process by which a minor can become emancipated.</u>
>
> Courts will review "Petitions for Emancipation" and decide on a case-by-case basis if there is sufficient evidence to find that a minor may live "independently" of his/her parents or guardian. However, the courts **do not** publish forms or instructions to petition for "emancipation." The Legal Fact Sheet on Emancipation published by Mid-Minnesota Legal Aid explains the basics on this area of law. To get legal advice on your situation, you should talk with a lawyer.[1]

(Original emphasis).

94.   Notably, the Minnesota judicial website does not identify a corollary process for a parent to petition for a full or partial restoration of parental rights in the context of an emancipation application or petition in

---

[1] Website: http://www.mncourts.gov/Help-Topics/Emancipation.aspx (emphasis added).

the context of an agency or entity recognizing the emancipation of a minor in the absence of any judicial review process as outlined in the website.

95.    In other words, Minnesota courts recognize that a "petition for emancipation" – and the due process for the parent(s) relating thereto – is necessary prior to terminating parental rights in the context of a minor child being emancipated.

96.    However, the state legislature, unlike in the subjects areas of marital dissolution, paternity and child protection, have not statutorily codified the procedural due process rights of parents with respect to emancipation of a minor child or with respect to emancipation as determined under Minnesota Statute § 144.341 by finding a minor's giving of "effective consent."

97.    Minnesota Statute § 144.341, as to medical treatment for an emancipated minor child without a court order, terminates parent rights and provides no procedure before nor after to retain, regain, or restore parental rights:

> Notwithstanding any other provision of law, any minor who is living separate and apart from parents or legal guardian, whether with or without the consent of a parent or guardian and regardless of the duration of such separate residence, and who is managing personal financial affairs, regardless of the source or extent of the minor's income, may give effective consent to personal medical, dental, mental and

> other health services, and the consent of no
> other person is required.

98.     Minnesota Statute § 144.341 does not provide Minnesota parents with any procedural due process rights prior to or after a minor child being emancipated for the purposes of medical, dental, mental, and other health services.

99.     Neither Park Nicollet nor Fairview provided notice and opportunity to be heard to Ms. Calgaro to participate in or challenge their emancipation decisions regarding J.D.K. before or after the termination of her parental rights.

## VII.    The County, Park Nicollet and Fairview determined J.D.K. is emancipated under Minnesota Statute § 144.341 without parental consent and without a court order and denied Plaintiff access to J.D.K.'s medical records.

100.     J.D.K., without parental consent, succeeded in obtaining medical services from Park Nicollet and Fairview.

101.     J.D.K., without parental consent, succeeded in obtaining medical services in the form of prescription drugs, including narcotics, from Fairview, and succeeded in obtaining medical services to change sex from a male to a female from Park Nicollet.

102.     St. Louis County is paying for and/or approving payment for J.D.K.'s medical services through the Department of Health.

103.   The governmental moneys compensate Fairview and Park Nicollet for the medical services provided to J.D.K.

104.   Attached hereto as Exhibit C is a copy of Park Nicollet Minneapolis Gender Services letter which states that J.D.K. is receiving medical services to change sex from a male to a female.

105.   Park Nicollet and Fairview are treating J.D.K. as an adult with exclusive rights to information and decision-making regarding the medical procedures and services J.D.K. is receiving.

106.   Elective medical services for a sex change for a minor child is a life-changing event.

107.   Seeking elective medical services for a sex change by minor child is a life-changing decision.

108.   Park Nicollet did not contact Ms. Calgaro about J.D.K.'s request or consent for a sex change.

109.   Park Nicollet and Fairview did not sufficiently inquire about the sincerity and/or veracity of the minor child J.D.K..

110.   Without any investigation or inquiry regarding the consent of J.D.K. for elective medical services, neither Park Nicollet nor Fairview can assert that either entity rendered the medical services or procedures in good faith under Minnesota Statute § 144.345.

111. Further, Park Nicollet and Fairview have determined that medical records will not be provided to Ms. Calgaro under Minnesota Statute § 144.346 governing when medical professions may inform parents about medical treatment where the failure to inform the parent would jeopardize the health of the minor child:

> The professional may inform the parent or legal guardian of the minor patient of any treatment given or needed where, in the judgment of the professional, failure to inform the parent or guardian would seriously jeopardize the health of the minor patient.

112. Therefore, under the circumstances of this case, Ms. Calgaro has no access to J.D.K.'s medical records from Park Nicollet, nor Fairview.

113. In 2016, and through the date of filing of this Complaint, Ms. Calgaro has requested J.D.K.'s medical records from Park Nicollet and has asked to participate in J.D.K.'s medical decisions.

114. Park Nicollet refused and refuses Ms. Calgaro's requests because Park Nicollet has determined J.D.K. is emancipated.

115. There is no court order granting J.D.K. emancipation that would allow him to give effective consent for medical services, particularly that of a sex change.

116. Park Nicollet has provided and continues to provide medical services to J.D.K. without Ms. Calgaro's consent.

117.   Moreover, Park Nicollet does not provide a process in which Ms. Calgaro can regain or otherwise retain her parental rights over the care, custody and control of her minor child J.D.K. regarding the medical services Park Nicollet is providing J.D.K.

118.   In 2016 and through the date of filing this complaint, Plaintiff has requested J.D.K.'s medical records from Fairview and asked to participate in J.D.K.'s medical decisions, but Fairview refuses because Fairview has determined J.D.K. is emancipated.

119.   There is no court order granting J.D.K. emancipation that would allow him to give effective consent for medical services, particularly that of prescribed narcotics.

120.   Fairview has provided and continues to provide medical services to J.D.K. without Ms. Calgaro's consent.

121.   Moreover, Fairview does not provide a process in which Ms. Calgaro can regain or otherwise retain her parental rights over the care, custody and control of her minor child J.D.K. regarding the medical services Fairview is providing J.D.K.

122.   During this period, J.D.K., without parental consent, has also succeeded in convincing St. Louis County that he is emancipated without court order for the purposes of receiving government-paid medical benefits.

123.   St. Louis County determined, without a hearing or notice to Ms. Calgaro, that J.D.K. is emancipated.

124.   It is the practice and custom of St. Louis County to determine that a minor is emancipated without notice to or a hearing for the minor child's parents.

125.   St. Louis County's determination of J.D.K. as emancipated has effectively terminated the parental rights of Ms. Calgaro.

126.   Furthermore, the St. Louis County is providing or approving other governmental moneys to J.D.K. related to living expenses.

127.   St. Louis County is treating J.D.K. as an adult with exclusive rights to information and decision-making.

128.   Therefore, Ms. Calgaro has no access to his county records or legal authority to affect J.D.K.'s decision-making with the county.

129.   In 2016, and through the date of filing this complaint, Ms. Calgaro has made requests to the County to access county records and to participate in J.D.K.'s decision-making with the County.

130.   The County refuses Ms. Calgaro's requests to participate and for access to J.D.K.'s county records.

131.   St. Louis County's determination that J.D.K. was eligible for government-paid medical services was the cause of why Park Nicollet and

Fairview determined that J.D.K. was emancipated for the purposes of providing medical services.

132.   St. Louis County provides no process of notice to or hearing for Ms. Calgaro, as the biological mother and parent of J.D.K., to regain, retain, or restore in full or in part her parental rights.

133.   In summary, without parental consent and without a court order adjudicating emancipation, St. Louis County, Park Nicollet and Fairview paid for and provided medical services to J.D.K. and denies Plaintiff access to J.D.K.'s records.

## VIII.   The School District has determined J.D.K. is emancipated without parental consent and without a court order and denied Plaintiff access to J.D.K.'s educational records.

134.   In 2016, Ms. Calgaro requested the School District to allow her to participate in J.D.K.'s educational decisions and to have access to J.D.K.'s educational records.

135.   The School District has denied Ms. Calgaro's request to participate in J.D.K.'s educational decisions and has denied access to his educational records.

136.   At about the same time, Ms. Calgaro requested the principal of Cherry School an opportunity to participate in J.D.K.'s educational decisions and to have access to J.D.K.'s school records.

137.   The principal of Cherry School refused Ms. Calgaro's requests.

138.  The School District determined J.D.K. emancipated without Ms. Calgaro's knowledge or parental consent.

139.  The School District did not give notice or hold a hearing when it determined J.D.K. emancipated.

140.  The determination by the School District effectively terminated the parental rights of Ms. Calgaro.

141.  The School District is aware of parental rights.

142.  The School District is aware that parental rights are protected under the U.S. Constitution.

143.  It is the policy, practice, and custom of the School District not to give notice or hold a hearing with the parent(s) present when it determines a minor child is emancipated.

144.  Further, the School District does not have a process in which a parent may seek to retain or restore in full or in part their parental rights.

145.  Ms. Calgaro was not provided a process in which she was given notice or an opportunity to have a hearing to retain or restore in full or in part her parental rights over J.D.K.

146.  Notably, there is no statute that allows the School District to make an emancipation decision for a minor, to refuse parents access to school records or to refuse parents an opportunity to participate in the decision-making of the educational opportunities of a minor child.

147.   Unlike the medical service providers, described above, the School District has no statute to rely on for its emancipation decision.

148.   The School District's policy does not provide parents with notice and opportunity to be heard prior to or after school district emancipation without a court order.

149.   The School District did not obtain nor have in hand a court order prior to declaring J.D.K. emancipated.

150.   Further, the common law provides no right for Ms. Calgaro to petition the School District to restore full or partial parental rights after the School District's determination of emancipation of J.D.K.

151.   Likewise, the common law provides no right for Ms. Calgaro to petition the court to restore full or partial parental rights before the School District determined J.D.K. as emancipated.

152.   So, Ms. Calgaro, as the biological mother and parent of J.D.K., has no recourse to the courts prior to or after the school district's emancipation determination.

153.   Likewise, the principal of Cherry School is an agent, representative, or employee of the School District.

154.   The principal implements the policies, practices, and customs of the School District as it would be applied to the Cherry School.

155.   Moreover, the principal is also provided some discretion to decision-making regarding matters as it affects the school and, therefore, acts as the final-decision maker regarding policies, practices, and customs at Cherry School.

156.   The principal of Cherry School interacts with students and parents on a daily basis.

157.   The principal is well aware of parental rights in the context of educational services and decision-making for minor children.

158.   The principal understands that parental rights are protected under the U.S. Constitution.

159.   The principal of Cherry School determined that J.D.K. was emancipated.

160.   The principal did so without notice or a hearing involving Ms. Calgaro as J.D.K.'s parent and biological mother.

161.   The principal's determination effectively terminated the parental rights of Ms. Calgaro.

162.   It is the policy, practice and custom of the principal of Cherry School not to give notice or hold a hearing with the parents present when the principal determines a minor child is emancipated.

163.   Further, the principal does not have a process in which a parent may seek to retain or restore in full or in part their parental rights.

164.   Ms. Calgaro was not provided a process in which she was given notice or an opportunity to have a hearing to retain or restore in full or in part her parental rights over J.D.K.

165.   Notably, there is no statute that allows the principal of a school to make an emancipation decision for a minor, to refuse parents access to school records or to refuse parents an opportunity to participate in the decision-making of the educational opportunities of a minor child.

166.   The school principal's policy does not provide parents with notice and opportunity to be heard prior to or after school district emancipation without a court order.

167.   The school's principal did not obtain nor have in hand a court order declaring J.D.K. emancipated.

168.   Further, the common law provides no right for the Ms. Calgaro to petition the principal of a school to restore full or partial parental rights after the principal's determination of emancipation of J.D.K.

169.   Likewise, the common law provides no right for Ms. Calgaro to petition the court to restore full or partial parental rights before the principal determined J.D.K. as emancipated.

170.   So, Ms. Calgaro, as the biological mother and parent of J.D.K., has no recourse to the courts prior to or after a school principal's emancipation determination.

171.   The School District has violated Plaintiffs' federal due process rights to notice and an opportunity to be heard.

## COUNT I

**The Defendants violated Ms. Calgaro's protected rights under the Due Process Clause of the U.S. Constitution Fourteenth Amendment.**

172.   All of the above paragraphs are incorporated herein as if they were stated in their entirety.

173.   This complaint is a 42 U.S.C. § 1983 civil rights action based on the U.S. Constitution Fourteenth Amendment Due Process Clause seeking a declaratory judgment and injunction enjoining defendants from acting as if minor child J.D.K. is emancipated without a court order until Plaintiff as the minor's mother is afforded an opportunity by statute to petition in state court to restore her partial or full parental rights.

174.   The Fourteenth Amendment of the United States Constitution states:

> [N]or shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

175.   Under 42 U.S.C. § 1983, the statutory provisions provide persons a federal cause of action based on persons operating under color of state law violating of federal law:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress….

176.   Courts have recognized that the Due Process Clause of the U.S. Constitution protects the fundamental right of parents to make decisions concerning the care, custody and control of their children, as expressed for instance in *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) and *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978).

177.   Courts have recognized that the right to familial relations includes the liberty interest of parents in the custody, care and control of their children, as expressed for instance in *King v. Olmstead County*, 117 F.3d 1065, 1067 (8th Cir. 1997) and *Slaven v. Engstrom*, 710 F.3d 772, 779 (8th Cir. 2013) quoting *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion).

178.   Parental due process rights regarding termination of parental rights are clearly established.

179. At all times, the Defendants knew that their respective determination of J.D.K.'s emancipation effectively terminated the protected constitutional parental rights of Ms. Calgaro.

180. At all times, the Defendants knew that their respective determination of J.D.K's emancipation without notice nor a hearing before or after their decision violated the federal due process rights of Ms. Calgaro.

181. At all times, the Defendants have refused to provide Ms. Calgaro notice and an opportunity to be heard to retain or to restore her parental rights in full or in part over her minor child J.D.K.

182. At all times, the Defendants purposefully failed to provide Ms. Calgaro notice or an opportunity to be heard before they determined J.D.K. emancipated.

183. Parental rights are considered a protected fundamental right and, specifically, a "liberty" interest under the Fourteenth Amendment which, therefore, may not be terminated without "due process of law."

184. A governmental determination of emancipation effectively terminates the custody and control decision-making of a parent or parents.

185. The decisions concerning the custody and control over a minor child involve parental rights protected under the U.S. Constitution.

186.  A decision that has the legal effect of granting a minor child emancipation, effectively terminating parental rights of the child's parent(s), requires notice to the parent(s).

187.  A decision that has the legal effect of granting a minor child emancipation, effectively terminating parental rights of the child's parent(s), requires a hearing involving the parent(s).

188.  Under Minnesota Statute § 144.341, there is no provision allowing Ms. Calgaro, as J.D.K.'s biological mother and parent to restore in full or in part her parental rights protected under the U.S. Constitution regarding medical services the Defendants Department of Public Health, Fairview Health Services, and Park Nicollet Health Services have provided and continue to provide to J.D.K. without parental consent.

189.  Under Minnesota common law, there is no private cause of action allowing Ms. Calgaro, as J.D.K.'s biological mother and parent to restore in full or in part her parental rights protected under the U.S. Constitution to challenge the St. Louis County School District's and Cherry School's determination and enforcement of the "emancipation letter" of the Mid-Minnesota Legal Aid clinic or J.D.K.'s declaration that he is emancipated.

190.  Under Minnesota common law, there is no private cause of action allowing Ms. Calgaro, as J.D.K.'s biological mother and parent to restore in full or in part her parental rights protected under the U.S.

Constitution to regain or restore in full or in part, her parental rights over J.D.K. that the St. Louis County School District and Cherry School have refused to recognize by their respective determination and enforcement actions of the "emancipation letter" of the Mid-Minnesota Legal Aid clinic or J.D.K.'s declaration that he is emancipated.

191.   This complaint based on the U.S. Constitution Fourteenth Amendment Due Process Clause seeks a declaratory judgment and injunction enjoining all defendants from acting as if any of Ms. Calgaro's children are emancipated without a court order until Ms. Calgaro has an opportunity to petition the state court to restore full or partial parental rights.

192.   Ms. Calgaro's parental rights are fundamental rights recognized and protected under the U.S. Constitution.

193.   As fundamental rights, Ms. Calgaro's parental rights cannot be terminated without procedural due process under the U.S. Constitution Fourteenth Amendment Due Process Clause.

194.   St. Louis County, Park Nicollet, Fairview, the School District, and their respective officials, acting under the color of state law and their own policies, customs, or usages by emancipating J.D.K., without a prior court order of emancipation, have subjected Ms. Calgaro to the deprivation of her procedural due process rights secured by the U.S. Constitution prior to and after the termination of her parental rights by the respective Defendants.

195. The Defendants' actions, individually and collectively, have violated Ms. Calgaro's procedural due process rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

196. Ms. Calgaro is entitled to a court process – notice and opportunity to be heard – prior to or after termination, or both, concerning her parental rights.

197. In this lawsuit relating to medical and educational services provided to a minor, Ms. Calgaro claims that the Defendants violate her federal procedural Due Process Clause rights because she has no statutory or common law cause of action in court (1) to challenge Defendant St. Louis County Public Health and Human Service's eligibility determination to pay for J.D.K.'s medical services at Park Nicollet and Fairview and deny parental access to medical records without a court order; (2) to challenge Defendant Park Nicollet's and Defendant Fairview's determination of emancipation of J.D.K. to provide medical services and deny access to medical records without a court order; and (3) to challenge the School District's and the principal of Cherry School determinations of emancipation of J.D.K. to provide educational services and deny access to educational records without a court order.

198. Park Nicollet's and Fairview's determination of emancipation without a court order was based upon the government's willingness to pay for

the medical services via Defendant St. Louis County's determination that J.D.K. was eligible for such benefits.

199.   There is no parental cause of action under Minnesota statute or common law to challenge St. Louis County's, Park Nicollet's, and Fairview's emancipation determinations without a court order which led to the government-paid medical services being provided to J.D.K. without parental consent.

200.   The Minnesota statute § 144.341, allowing the medical service provider to determine emancipation, does not provide a cause of action for a parent to bring a lawsuit to restore full or partial parental rights.

201.   Although Minnesota common law recognizes a minor child's right to petition for emancipation, there is no Minnesota common law cause of action for a parent to bring in court to restore full or partial parental rights once a child is emancipated by Defendants without a court order.

202.   Specifically, Minnesota Statute  § 144.341 authorizes medical service providers to determine whether a minor child such as J.D.K. is emancipated without a court order:

> Notwithstanding any other provision of law, any minor who is living separate and apart from parents or legal guardian, whether with or without the consent of a parent or guardian and regardless of the duration of such separate residence, and who is managing personal financial affairs, regardless of the source or extent of the minor's income, may give effective consent to personal medical, dental,

mental and other health services, and the consent of no other person is required.

203.   According to the state statute, Park Nicollet and Fairview in determining J.D.K.'s emancipation took into account under "regardless of the source or extent of minor's income" that St. Louis County had determined J.D.K's eligibility for government-paid benefits.

204.   Moreover, if the medical service provider had refused treating J.D.K. as emancipated, J.D.K. was entitled under Minnesota common law to proceed with a petition for emancipation.

205.   Conversely, even though Ms. Calgaro as a mother objects to J.D.K. being provided such medical services without court order and without parental consent, Ms. Calgaro has no legal rights under Minnesota Statute § 144.341 to bring a cause of action to restore her full or partial parental rights prior to or after the Defendants' determinations of emancipation under state law.

206.   Further, Minnesota common law has never recognized a cause of action for a parent to sue in district court to restore full or partial parental rights after a determination of emancipation under Minnesota Statute § 144.341 or otherwise.

207.   There is no parental corollary under Minnesota common law for the minor child's petition for a court order of emancipation.

208.   A parent under Minnesota common law has no right to bring a lawsuit after a Defendant has determined a minor child is "emancipated" under Minnesota Statute § 144.341 or otherwise without a court order.

209.   Since Minnesota Statute § 144.341 does not authorize a parent to bring such a lawsuit, parents have no legal cause of action in court to challenge the government's and medical service provider's determination of "emancipation" under Minnesota Statute § 144.341 to provide medical services to a minor child.

210.   Further, Plaintiff has requested from the School District to participate in J.D.K.'s educational decisions and have access to J.D.K.'s educational records.

211.   The School District has denied Plaintiffs' request to participate in J.D.K.'s educational decisions and denied Plaintiff access to J.D.K.'s educational records.

212.   The School District has emancipated J.D.K. without parental consent and without a court order.

213.   However, unlike the medical service providers, the School District has no statute to rely as its legal authority for its emancipation decision.

214.   The School District's policy does not provide parents with notice and opportunity to be heard prior to or after school district determines emancipation without a court order of emancipation.

215.   The common law provides no right for the Plaintiff to petition to restore full or partial parental rights after the school district's determination of emancipation.

216.   So, Ms. Calgaro has no recourse to the courts prior to or after school district emancipation to restore partial or full parental rights.

217.   The School District has violated Ms. Calgaro's federal due process rights to notice and opportunity to be heard.

218.   Under these circumstances, parents like the Plaintiff have no notice nor opportunity to be heard pre-deprivation nor post-deprivation.

219.   Ms. Calgaro's federal due process rights have been violated by Defendants.

220.   The Defendants' violative actions have caused damages to Ms. Calgaro including loss of wages, personal injury and emotional distress.

221.   The Defendants' violative actions have caused damages to Ms. Calgaro in an amount exceeding $50,000.

## COUNT II

## DECLARATORY JUDGMENT

222.   All of the above paragraphs are incorporated herein as if they were stated in their entirety.

223.   The Court has inherent or statutory authority to issue declaratory judgments.

224.   Ms. Calgaro seeks a declaratory judgment declaring that her due process rights under the U.S. Constitution Due Process Clause were violated by Defendants because she has no statutory or common law cause of action to challenge in state court the Defendants' determinations of emancipation without a court order which led to the medical, educational and other services being provided  and denial of access to medical, educational and other records without parental consent and without a court order.

## COUNT III

## INJUNCTION

225.   All of the above paragraphs are incorporated herein as if they were stated in their entirety.

226.   The Court has legal authority to issue injunctions.

227.   The Ms. Calgaro petitions for an injunction enjoining the Defendants from providing any additional services to the minor children of Ms. Calgaro without parental consent until she has had an opportunity in

state court to petition to restore all or partial parental rights or until a state court order of emancipation is issued.

228.   Additionally, Ms. Calgaro petitions for an injunction requiring the Defendants to provide medical, educational and other records of the minor children to Ms. Calgaro until she has had an opportunity in state court to petition to restore all or partial parental rights or until a state court order of emancipation is issued.

## DEMAND FOR JURY TRIAL

229.   Plaintiff Anmarie Calgaro also demands a jury trial regarding the allegations asserted in the instant Complaint.

## PRAYER FOR RELIEF

The Plaintiff Anmarie Calgaro prays for the following relief:

1.     a 42 U.S.C. § 1983 judgment awarding nominal damages and damages against each Defendant in an amount exceeding $75,000;

2.     a declaratory judgment declaring that Ms. Calgaro's due process rights under the U.S. Constitution Due Process Clause were violated when the Defendants treated J.D.K as emancipated without a court order and provided medical, educational and other services without parental consent and refused parental

access to medical, educational and other records while Minnesota statues, common law and Defendants' policies provided no cause of action to Ms. Calgaro to petition to restore full or partial parental rights;

3.   an injunction enjoining  the Defendants from  providing any additional medical, educational or other services to any of the minor children of Ms. Calgaro deemed emancipated by Defendants without Ms. Calgaro's consent until she has had an opportunity in state court to petition to restore all or partial parental rights or until a state court order of emancipation is issued and requiring the Defendants to provide medical, educational and other records of any of Ms. Calgaro's minor children deemed emancipated by Defendants to Ms. Calgaro until she has had an opportunity in state court to petition to restore all or partial parental rights or a state court order of emancipation is issued;

4.   an award under 42 U.S.C. § 1988 and other applicable laws against each Defendant of attorney's fees, costs, witness fees, expenses, etc.; and

5.   any other legal or equitable relief which the Court deems just to award.

Dated: November 16, 2016        /s/Erick G. Kaardal
                                  Erick G. Kaardal, 229647
                                  Mohrman, Kaardal & Erickson, P.A.
                                  150 South Fifth Street, Suite 3100
                                  Minneapolis, Minnesota 55402
                                  Telephone: 612-341-1074
                                  Facsimile: 612-341-1076
                                  Email: kaardal@mklaw.com

                                  *Attorneys for Petitioner*

## VERIFICATION OF PETITION

    I sign the petition as a petitioner. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  November 16, 2016        */s/Anmarie Calgaro*
                                  Anmarie Calgaro