# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ANMARIE CALGARO,

       Plaintiff,

v.

ST. LOUIS COUNTY; LINNEA
MIRSCH, individually and in her official
capacity as Interim Director of St. Louis
County Public Health and Human
Services; FAIRVIEW HEALTH
SERVICES, a Minnesota Nonprofit
Corporation; PARK NICOLLET
HEALTH SERVICES, a Nonprofit
Corporation; ST. LOUIS COUNTY
SCHOOL DISTRICT; MICHAEL
JOHNSON, individually and in his official
capacity as principal of the Cherry School,
ST. LOUIS COUNTY SCHOOL
DISTRICT; and J.D.K.,

       Defendants.

Case No. 16-cv-3919 (PAM/LIB)

**DEFENDANT E.J.K.'s
MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO F.R.C.P. 12(b)(6)**

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

ARGUMENT......................................................................................................... 7

    I.     E.J.K. Is Not a Proper Defendant Because She Is Not a State Actor. ........... 9

    II.    Minnesota's Mature Minor Statute Does Not Violate Plaintiff's
         Right to Due Process. ................................................................................. 10

         A.     Plaintiff Does Not Have a Constitutional Right to Override the
                Medical Decision-Making of a Mature Minor. ................................ 11

         B.     Plaintiff Has Not Alleged Any Governmental Constraint or
                Compulsion, and Therefore Cannot Establish a Due Process
                Violation. ........................................................................................ 14

    III.   Plaintiff Failed to Avail Herself of Procedural Safeguards Under
         Minnesota Law. .......................................................................................... 19

CONCLUSION ................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anspach ex rel. Anspach v. City of Phila., Dep't of Public Health*,
503 F.3d 256 (3d Cir. 2007) ............................................................................... 13, 15, 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 7

*Baker v. McCollan*,
443 U.S. 137 (1979) ...................................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 7

*Bellotti v. Baird*,
443 U.S. 622 (1979) .................................................................................................... 11

*Bramlet v. Wilson*,
495 F.2d 714 (8th Cir. 1974) ........................................................................................ 7

*Crumpley-Patterson v. Trinity Lutheran Hosp.*,
388 F.3d 588 (8th Cir. 2004) ........................................................................................ 9

*Daniels v. Jesson*,
2014 WL 3629874 (D. Minn. July 22, 2014) ............................................................... 8

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*,
489 U.S. 189 (1989) .................................................................................................... 18

*Dixon v. Vera Lloyd Presbyterian Home & Family Servs., Inc.*,
116 F. App'x 34 (8th Cir. 2004) ................................................................................... 9

*Doe v. Irwin*,
615 F.2d 1162 (6th Cir. 1980) ................................................................... 14, 15, 16, 17

*Dossett v. First State Bank*,
399 F.3d 940 (8th Cir. 2005) ........................................................................................ 8

*DuBose v. Kelly*,
187 F.3d 999 (8th Cir. 1999) ........................................................................................ 9

*Eckert v. Titan Tire Corp.*,
514 F.3d 801 (8th Cir. 2008) ........................................................................................ 7

*Gordon v. Hansen*,
    168 F.3d 1109 (8th Cir. 1999) ................................................... 10

*Hager v. Ark. Dep't of Health*,
    735 F.3d 1009 (8th Cir. 2013) .................................................... 7

*Hall v. Ramsey Cnty.*,
    801 F.3d 912 (8th Cir. 2015) ..................................................... 10

*Harris v. McRae*,
    448 U.S. 297 (1980) ................................................................. 18

*Hassett v. Lemay Bank & Trust Co.*,
    851 F.2d 1127 (8th Cir. 1988) ..................................................... 8

*Hayward v. Health Dep't & Dep't of Law, City of Independence, Mo.*,
    98 F. App'x 566 (8th Cir. 2004) ............................................... 8, 9

*Hodgson v. Minnesota*,
    853 F.2d 1452 (1988), *aff'd*, 497 U.S. 417 (1990) ...................... 13

*J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*,
    650 F.3d 915 (3d Cir. 2011)...................................................... 17

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)................................................................. 8

*Magee v. Trs. of Hamline Univ., Minn.*,
    747 F.3d 532 (8th Cir. 2014) ..................................................... 8

*McNichols v. Hennepin Cnty.*,
    2004 WL 1386158 (D. Minn. June 18, 2014)............................... 9

*Mershon v. Beasley*,
    994 F.2d 449 (8th Cir. 1994) ..................................................... 9

*MM Silta, Inc. v. Cleveland Cliffs, Inc.*,
    616 F.3d 872 (8th Cir. 2010) ..................................................... 7

*Neitzke v. Williams*,
    490 U.S. 319 (1989)................................................................. 7

*Pierce v. Society of Sisters*,
    268 U.S. 510 (1925)................................................................. 14

*Planned Parenthood of Cent. Mo. v. Danforth*,
   428 U.S. 52 (1976) ......................................................................... 11, 14

*Reardon v. Midland Cmty. Schs.*,
   814 F. Supp. 2d 754 (E.D. Mich. 2011) ..................................................... 17

*Reasonover v. St. Louis Cnty., Mo.*,
   447 F.3d 569 (8th Cir. 2006) .................................................................. 9

*Shrum ex rel. Kelly v. Kluck*,
   249 F.3d 773 (8th Cir. 2001) .................................................................. 8

*Silver v. H&R Block, Inc.*,
   105 F.3d 394 (8th Cir. 1997) .................................................................. 7

*Swipies v. Kofka*,
   419 F.3d 709 (8th Cir. 2005) ................................................................. 11

*West v. Atkins*,
   487 U.S. 42 (1988) ............................................................................... 8

*Wisconsin v. Yoder*,
   406 U.S. 205 (1972) ........................................................................... 15

**STATE CASES**

*Curtis v. Sch. Comm. of Falmouth*,
   652 N.E.2d 580 (Mass. 1995) ........................................................... 15, 17

*Decker v. Carroll Academy*,
   1999 WL 332705 (Tenn. Ct. App. May 26, 1999) ..................................... 17

*In re E.G.*, 549 N.E.2d 322 (Ill. 1989) ..................................................... 13

*Younts v. St. Francis Hosp. & Sch. of Nursing, Inc.*,
   469 P.2d 330 (Kan. 1970) .................................................................... 12

**STATE STATUTES**

Alaska Stat. § 25.20.025 ....................................................................... 12

Cal. Fam. Code § 6922(A) ..................................................................... 12

Colo. Rev. Stat. § 13-22-103(1)-(2) ......................................................... 12

Ind. Code § 16-36-1-3(A)(2)(B)(I)-(Iv) ..................................................... 12

Mass. Gen. Laws Chapter 112, § 12f(V) ............................................................................ 12

Md. Code Ann., Health-Gen. § 20-102(A)(3)(I)-(Ii) ....................................................... 12

Me. Rev. Stat. Ann. Title 22, § 1503(1) ........................................................................... 12

Minn. Stat. § 144.341 ............................................................................................... passim

Minn. Stat. Chapter 260C ................................................................................................. 19

Minn. Stat. § 260C.141 ................................................................................................. 5, 20

Minn. Stat. § 260C.201 ..................................................................................................... 20

Minn. Stat. § 260C.317, subd. 1 ...................................................................................... 16

Mo. Rev. Stat. § 431.056 .................................................................................................. 12

Mont. Code Ann. §§ 41-1-401(1)(B), 41-1-402(2)(B) (2015) ......................................... 12

N.M. Stat. Ann. § 24-7a-6.2(A)(1) ................................................................................... 12

Nev. Rev. Stat. § 129.030(1)(A) ....................................................................................... 12

Okla. Stat. Title 63, § 2602(A)(2) .................................................................................... 12

Tex. Fam. Code Ann. § 32.003(A)(2)(A)-(B) .................................................................. 12

Wyo. Stat. Ann. § 14-1-101(B)(Iv) .................................................................................. 12

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 892A cmt. b (1979) ...................................................... 12

## INTRODUCTION

By her own admission, Plaintiff Anmarie Calgaro has not fed or sheltered defendant E.J.K.[1]—her own child—for nearly two years.  During much of that time, after some brief periods with other relatives and with friends, E.J.K. has provided for herself, earned her own income, enrolled herself in school, and sought her own medical insurance and medical care.  Currently, she is still living independently of her parents and managing her own financial affairs, and she expects to continue do so until she reaches the age of majority in approximately seven months.

Like many states, Minnesota expressly provides a legal avenue for minors in E.J.K.'s position to consent to medical treatment.  Minnesota Statutes Section 144.341 provides:

> Notwithstanding any other provision of law, any minor who is living separate and apart from parents or legal guardian, whether with or without the consent of a parent or guardian and regardless of the duration of such separate residence, and who is managing personal financial affairs, regardless of the source or extent of the minor's income, may give effective consent to personal medical, dental, mental and other health services, and the consent of no other person is required.

Plaintiff argues that Section 144.341 violates her procedural due process rights as a parent because it does not provide a mechanism for parents to object to the provision of medical care or to obtain a court order preventing such care.  Plaintiff seeks an injunction

---

[1]  The initials E.J.K. reflect the name that Defendant uses in school, at work, and throughout her daily life.  Moreover, although the Complaint refers to her as male and as Plaintiff's son, E.J.K. is female.  She respectfully requests that the Court refer to her by the initial E.J.K. and use female pronouns.

preventing other Defendants from providing care to E.J.K. until a Minnesota court either hears her objection or declares E.J.K. an emancipated minor.

Because Plaintiff's Complaint states no claim upon which relief can be granted, this action should be dismissed in its entirety, for several reasons. First, because E.J.K. is not a state actor, she is not a proper defendant, and Plaintiff may not bring her constitutional claims against E.J.K. Second, even if Plaintiff had named a proper defendant, Section 144.341 does not violate her due process rights. That statute merely reflects the well-established constitutional and statutory right of mature minors to consent to medical care, and Plaintiff has no constitutionally-protected right to override that authority. Moreover, the statute does not terminate Plaintiff's parental rights or prohibit or compel any conduct on her part, and therefore does not deprive her of due process as a matter of law. Finally, Minnesota law provides several procedures through which Plaintiff could have attempted to provide a home for E.J.K. and thereby avoid the application of Section 144.341. *See* Section III, below.

Having chosen not to pursue her opportunities to act as a parent to E.J.K., Plaintiff cannot plausibly claim that her due process rights have been violated by Defendants' reliance on Section 144.341.

## Background Regarding E.J.K.

E.J.K. spent most of her childhood in Hibbing, Minnesota, where the serious challenges she faced as a child forced her to learn to be resilient and self-sufficient from an early age. During much of E.J.K.'s childhood, her parents were unable to provide her with much stability, nurturing, or parental care due to their struggles with substance

2

abuse and other issues.  Even as a child, E.J.K. thus learned to handle routine daily tasks through which most children rely on their parents to shepherd them, from getting up and dressed for school to preparing meals.  In addition, E.J.K. learned as a child to turn to a network of other adults who supplied some of the care and nurturing that her biological parents were unable to offer.

Despite E.J.K.'s resourcefulness and the support network she had built for herself, E.J.K.'s home life became intolerable when—at around age 13—she began identifying as gay to friends and family.  Far from providing a supportive environment, Plaintiff and her husband—who is not E.J.K.'s father—responded with verbal denigration and physical abuse.  At first, E.J.K. tried to avoid the hostility of her mother's household by staying outside her home, most often with friends and, at one point, even in a homeless shelter. At age 15, E.J.K. obtained Plaintiff's approval to leave home, transfer schools, and move in with her biological father, who lived in St. Cloud.  Unfortunately, her father was incarcerated shortly after she moved in with him.

Because E.J.K. did not believe she could endure returning to the hostility of her mother's home, she refused to return to Plaintiff's home when her father was incarcerated, and instead spent short intervals with a patchwork of other friends and family members.  This allowed E.J.K. to remain enrolled in school and complete the school year.  During that time, she also consulted a lawyer at Mid-Minnesota Legal Aid, who provided her with a letter opining that she is emancipated under Minnesota law and who helped her to understand and navigate the practical necessities of life on her own.

In October 2015, E.J.K. returned to Hibbing, where she at first lived with a close friend and where she now lives in her own apartment.  Once back in Hibbing, E.J.K. enrolled herself in school, applied for health insurance coverage through MNsure, and found a job.  For more than a year, E.J.K. has been providing for herself financially and living as an adult caring for her own needs.  With the exception of a few months when she had to rely on General Assistance, E.J.K. has been consistently employed full-time. She currently works as support staff at an in-patient facility, a job that provides income sufficient to cover all of her monthly expenses.

Around the same time that she returned to Hibbing, E.J.K. sought professional care for the dysphoria she was experiencing related to her gender.  Since she was a young child, E.J.K. has known that she is a girl and, when possible, dressed in girl's clothes. With the advice and assistance of experienced healthcare providers, E.J.K. began her gender transition to living her life consistent with her female gender identity.  For E.J.K., this meant adopting her current name and starting a regimen of medications, including hormone replacement therapy, to help bring her body into closer alignment with her female gender identity.  E.J.K.'s mother has been thoroughly unsupportive, and has used her sporadic contacts with E.J.K. to denigrate the decisions E.J.K. has made for herself and who she is as a person.

E.J.K. is now close to earning her high school degree, and she will turn 18 this coming July.  Upon securing her degree, E.J.K. hopes to pursue a career in healthcare. She has already received preliminary acceptance letters from two nursing schools in Minnesota.

**Allegations Subject to Rule 12 Analysis.**

E.J.K. is the biological child of Plaintiff.  (Complaint ¶¶ 3, 19.)  Although E.J.K. is currently a minor, she will turn 18 on July 6, 2017, less than six months after the hearing on this motion.  (*Id.* ¶ 23.)  Pursuant to a paternity order dated April 14, 2008—when E.J.K. was eight years old—Plaintiff has sole physical custody over E.J.K.  (*Id.* ¶ 44.)

In 2015, E.J.K. moved out of Plaintiff's home, and moved in with her father. (*Id.* ¶ 53.)  Plaintiff makes no allegation that she sought to enforce the 2008 order (which granted her sole physical custody), when E.J.K. moved in with her father.  E.J.K. refused to move back in with Plaintiff after leaving her father's house.  (*Id*. ¶ 53.)  Plaintiff makes no allegation that she sought to require E.J.K. to return to her home, but rather alleges only that she "at all times, has offered to [E.J.K.] to live in her home," and that E.J.K. "is always welcome in [her] home."  (*Id.* ¶¶ 50, 55.)  E.J.K. has lived apart from Plaintiff, and outside of Plaintiff's home, since E.J.K. moved out in 2015.  (*Id.* ¶¶ 53-54.)  Plaintiff makes no allegation that she assumed responsibility for E.J.K.'s health, safety, or material needs.

Plaintiff could, at any time, have sought protective services and assistance from her county child welfare agency and/or filed and prosecuted a private Child In Need of Protection or Services ("CHIPS") petition pursuant to Minnesota Statutes Section 260C.141.  Plaintiff makes no allegation that she ever took such actions.  On the contrary, Plaintiff affirmatively alleges that E.J.K. "has never been involved in Child In Need of Protection or Services ("CHIPS") petition court proceedings, foster placement court

proceedings, child protection court proceedings nor child custody court proceedings." (*Id.* ¶ 39.)

Before Plaintiff commenced this lawsuit, she requested information from St. Louis County and sought "to participate in J.D.K.'s decision-making with the County," she asked for E.J.K.'s school records and to participate in E.J.K.'s educational decisions, she sought to obtain medical information from E.J.K.'s healthcare providers, and she sought legal advice.  (*Id.* ¶¶ 76-79, 113, 118, 129, 134, 136, 210.)  Plaintiff makes no allegation that she has taken any other steps to "retain or regain" any parental rights.  (*Id.*)

Plaintiff makes no allegation that E.J.K. is a state actor or that E.J.K. has acted under color of state law.[2]  Plaintiff does not allege with any specificity what, if any, of Plaintiff's rights E.J.K. has violated.[3]  The letter attached as Exhibit A to Plaintiff's Complaint represents the opinion of an attorney who was acting as E.J.K.'s personal lawyer.  Plaintiff makes no allegation that the letter attached as Exhibit A to the Complaint was issued under the authority of any state statute or other state authority. Plaintiff has not named either Mid-Minnesota Legal Aid or the attorney who authored Exhibit A as a defendant in this action.

---

[2]     Plaintiff expressly alleges that every other defendant acted under color of state law.  (*See* Complaint ¶¶ 5, 9, 11, 13, 15, 17.)  She makes no such allegation regarding E.J.K.

[3]     Again, Plaintiff makes allegations that the other defendants—specifically listed by name—have deprived Plaintiff of her rights.  (*See* Complaint ¶ 194.)  E.J.K.'s name is notably absent from this list.

**ARGUMENT**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).  This requires the complaint to contain sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard requires "more than a sheer possibility that a defendant acted unlawfully."  *Id.*

A motion to dismiss a complaint under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *MM Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).  Dismissal under 12(b)(6) is appropriate where the complaint does not state "any valid claim for relief."  *Bramlet v. Wilson*, 495 F.2d 714 (8th Cir. 1974).  When examining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true.  *Twombly*, 550 U.S. at 570.  But conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim, *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997); *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013), and "a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555.

"Section 1983 imposes liability for certain actions taken 'under color of [state] law' that deprive a person 'of a right secured by the Constitution and laws of the United States.'" *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982)); *see also Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 778 (8th Cir. 2001). "[S]ection [1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parties of the United States Constitution and federal statutes that [Section 1983] describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Therefore, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and [the] laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014). Alleged "[p]rivate misuse of a statute by a private actor is not sufficient to state a claim under section 1983." *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1129 (8th Cir. 1988).

Courts dismiss Section 1983 claims where, as here, a plaintiff fails to allege that a defendant was acting under color of state law or that any of plaintiff's constitutional rights were violated. *See, e.g.*, *Hayward v. Health Dep't & Dep't of Law, City of Independence, Mo.*, 98 F. App'x 566, 567 (8th Cir. 2004) (dismissing Section 1983 claims that did not allege private parties were acting under color of state law); *Daniels v. Jesson*, 2014 WL 3629874, at *7 (D. Minn. July 22, 2014) (dismissing Section 1983 claim where plaintiff "has not properly pleaded a violation of a constitutional right"); *McNichols v. Hennepin Cnty.*, 2004 WL 1386158, at *3 (D. Minn. June 18, 2014)

(dismissing Section 1983 claim where the "Complaint fails to allege a violation of [plaintiff]'s constitutional right").

Plaintiff has failed to state a Section 1983 claim against E.J.K. for the reasons set forth below.

## I.      E.J.K. Is Not a Proper Defendant Because She Is Not a State Actor.

Plaintiff's claims against E.J.K. fail because E.J.K. is not a state actor.[4]  "Section 1983 secures most constitutional rights from infringement by governments, not private parties."  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004); *see also Hayward*, 98 F. App'x at 567 (dismissing Section 1983 claim against private parties).  To maintain a cause of action against a private party, a plaintiff must plead facts that plausibly allege the private party was acting under color of state law.  *See Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 584 (8th Cir. 2006).  Under this standard, private parties can be liable for Section 1983 claims only under limited circumstances in which they are "willful participant[s] in joint action with the State."  *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1994); *see also DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999).

---

[4]      Plaintiff's failure to allege that E.J.K. is a state actor entitles E.J.K. to dismissal of the claims against her under Rule 12(b)(6).  Dismissal is additionally warranted because Plaintiff's failure to allege that E.J.K. was acting under color of state law deprives the Court of subject matter jurisdiction over Plaintiff's Section 1983 claim.  *See Dixon v. Vera Lloyd Presbyterian Home & Family Servs., Inc.*, 116 F. App'x 34, 35 (8th Cir. 2004) ("A motion to dismiss for lack of subject matter jurisdiction predicated on failure to establish an essential element of the cause of action should generally be analyzed under Fed. R. Civ. P. 12(b)(6).").

Plaintiff has not pled any state action by E.J.K.  Plaintiff does not allege any facts indicating that E.J.K. was acting under color of state law sufficient to impose Section 1983 liability—nor could she allege such facts, as the allegations of the Complaint plainly indicate that that E.J.K. was acting on behalf of no one but herself in obtaining healthcare.  Instead, Plaintiff alleges merely that E.J.K. "is an interested party as it relates to the allegations asserted in this Complaint."  (Complaint ¶ 18.)  This is insufficient to satisfy Plaintiff's pleading obligations, and the claims against E.J.K. must be dismissed.[5]

## II.     Minnesota's Mature Minor Statute Does Not Violate Plaintiff's Right to Due Process.

Plaintiff's claim that her procedural due process rights have been violated has no merit.  "To set forth a procedural due process violation, a plaintiff first, must establish that [her] protected liberty or property interest is at stake.  Second, the plaintiff must prove that the defendant deprived [her] of such an interest without due process of law."  *Hall v. Ramsey Cnty.*, 801 F.3d 912, 919 (8th Cir. 2015) (citations omitted); *see also Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999).  The specific circumstances of any deprivation "dictate what procedures" are necessary to satisfy the Due Process Clause.

---

[5]     For all of the reasons set forth in this memorandum and in the memoranda separately submitted on behalf of the other defendants, E.J.K. believes that this action should be dismissed in its entirety.  If the Court disagrees, and for any reason allows this action to proceed against any of the other defendants, then E.J.K. respectfully requests that, upon granting this motion, the Court permit E.J.K. to remain in the action as an intervenor.  *See* Fed. R. Civ. P. 24 (providing for intervention of right where the proposed intervenor "claims an interest in the subject matter of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest").

*Swipies v. Kofka*, 419 F.3d 709, 715 (8th Cir. 2005).  Plaintiff's allegations fail to satisfy either required element.

### A.   Plaintiff Does Not Have a Constitutional Right to Override the Medical Decision-Making of a Mature Minor.

Mature minors have a well-established constitutionally-protected right to consent to medical care, particularly with respect to medical issues that affect deeply personal issues, such as reproductive and sexual health.  "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights."  *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74–75 (1976) (invalidating statute prohibiting minors from consenting to abortion care); *see also Bellotti v. Baird*, 443 U.S. 622, 647 (1979) (noting mature minors are entitled to consent to abortion care independent of the parent's wishes).  Where a minor seeks constitutional protection against deprivations of a liberty or property interest, "the child's right is virtually coextensive with that of an adult."  *Bellotti*, 443 U.S. at 634.

In addition to being recognized by the U.S. Supreme Court as constitutionally protected in many circumstances, the right of certain minors to consent to their own medical treatment is also deeply embedded in the common law and statutes of many states, including Minnesota.  *See* Minn. Stat. § 144.341 (allowing minors who are living apart from their parents and managing their own financial affairs to consent to medical treatment). At least 15 states, including Minnesota, have enacted statutes allowing minors who have not obtained formal court orders of emancipation to consent to their own

medical treatment if they are living separately from their parents and managing their own financial affairs.  *See* Alaska Stat. § 25.20.025; Cal. Fam. Code § 6922(A); Colo. Rev. Stat. § 13-22-103(1)-(2); Ind. Code § 16-36-1-3(A)(2)(B)(I)-(Iv); Me. Rev. Stat. Ann. tit. 22, § 1503(1); Md. Code Ann., Health-Gen. § 20-102(A)(3)(I)-(Ii); Mass. Gen. Laws Ch. 112, § 12f(V); Mo. Rev. Stat. § 431.056; Mont. Code Ann. §§ 41-1-401(1)(B), 41-1-402(2)(B) (2015); Nev. Rev. Stat. § 129.030(1)(A); N.M. Stat. Ann. § 24-7a-6.2(A)(1); Okla. Stat. tit. 63, § 2602(A)(2); Tex. Fam. Code Ann. § 32.003(A)(2)(A)-(B); Wyo. Stat. Ann. § 14-1-101(B)(Iv).  These statutes also often permit a non-emancipated minor to obtain medical treatment without a parent's consent if the minor is married, is a parent, or is serving in the armed forces.  *See id.*  Many states also permit non-emancipated minors to obtain treatment, without parental consent, for certain categories of illness, such as sexually transmitted infections or drug or alcohol abuse.  *See id.*

Indeed, the long-recognized right of mature minors to consent to their own medical treatment extends beyond minors who are formally emancipated or living independently.  Under well-established common law principles, a mature minor—i.e., one who, based upon the totality of the circumstances, demonstrates an appreciation of the nature, extent, and probable consequences of the medical care consented to—would have the right to make the medical decisions at issue in this case even if he or she was still living at home and being supported by a parent.  *See, e.g.*, *Younts v. St. Francis Hosp. & Sch. of Nursing, Inc.*, 469 P.2d 330, 338 (Kan. 1970) (holding seventeen-year-old girl was able to consent to skin graft procedure without consent of parent); *see also* Restatement (Second) of Torts § 892A cmt. b (1979) ("If the person consenting is a child

12

or one of deficient mental capacity, the consent may still be effective if he is capable of

appreciating the nature, extent and probable consequences of the conduct consented to,

although the consent of a parent, guardian or other person responsible is not obtained or

is expressly refused.").

Under these well-established principles, E.J.K. has a constitutional and a statutory

right to make her own medical decisions.  E.J.K. is nearly 18 years old, has been living

independently from Plaintiff for nearly two years, supports herself financially, and is

going to school.  Plaintiff does not allege that E.J.K. lacks the capacity to appreciate the

risks and consequences of the medical care to which E.J.K. has consented, including the

transition-related medical care such as hormone replacement therapy. Thus, there can be

no serious dispute that E.J.K. has a right to consent to medical care.

Inherent in the constitutional rights of mature minors is a concomitant limitation

that prevents parents from simply overriding a mature minor's consent to medical care.

*See, e.g.*, *Hodgson v. Minnesota*, 853 F.2d 1452, 1455-56 (1988) (noting "state and

parental interests [in restricting access to abortions] must give way to the constitutional

right of a mature minor . . . to obtain an abortion without consulting or notifying her

parents."), *aff'd*, 497 U.S. 417 (1990); *cf. Anspach ex rel. Anspach v. City of Phila., Dep't*

*of Public Health*, 503 F.3d 256, 268 (3d Cir. 2007) ("Although the Anspachs' moral and

religious sensibilities may have been offended . . . . [t]he Constitution does not protect

parental sensibilities, nor guarantee that a child will follow their parents' moral

directives."); *In re E.G.*, 549 N.E.2d 322, 327-28 (Ill. 1989) (holding that parent did not

commit medical neglect by allowing mature minor to refuse medical care).

13

Thus, even assuming all of Plaintiff's allegations to be true, nothing she has alleged shows that she has been deprived of a constitutionally-protected liberty interest. While the Constitution protects the rights of parents, those rights are not absolute. When a child achieves sufficient maturity, as E.J.K. has, the child herself is entitled to the same constitutional protections and autonomy as others, including the right to consent to her own medical care. That principle is particularly clear where, as in this case, the minor has been living independently and supporting herself for nearly two years. Because the right to make the medical decisions at issue here ultimately rests with E.J.K., Plaintiff cannot plausibly allege deprivation of any protected liberty interest, and her due process claim must be dismissed.

> **B.     Plaintiff Has Not Alleged Any Governmental Constraint or Compulsion, and Therefore Cannot Establish a Due Process Violation.**

In addition to being unable to establish a due process violation because she cannot show any infringement of a protected interest, Plaintiff also cannot establish a due process violation because the facts she has alleged do not establish interference by a state actor that "either require[d] or prohibit[ed] some activity." *See Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980); *see also Danforth*, 428 U.S. at 73 (holding that parental rights are accorded constitutional protection only against unwarranted or unreasonable interference by the state).

The United States Supreme Court has consistently held that to assert a violation of parental rights, a parent must demonstrate that the state action affirmatively compelled or prohibited the complaining parent in the exercise of that right. *See, e.g.*, *Pierce v. Society*

*of Sisters*, 268 U.S. 510, 533-35 (1925) (holding that a law prohibiting parents from sending their children to private schools unconstitutionally interfered with the liberty interest of parents to direct the upbringing and education of their children); *Wisconsin v. Yoder*, 406 U.S. 205 (1972) (finding parents' constitutional rights infringed by law mandating school attendance).  These cases demonstrate that "[c]ourts have recognized the parental liberty interest only where the behavior of the state actor ***compelled interference*** in the parent-child relationship." *Anspach*, 503 F.3d at 262 (emphasis added); *Curtis v. Sch. Comm. of Falmouth*, 652 N.E.2d 580, 586 (Mass. 1995) (holding that under the Federal Constitution, an interference with parental rights may be unconstitutional if it is coercive or compulsory in nature, such that "the governmental action is mandatory and provides no outlet for the parents, such as where refusal to participate in a program results in a sanction or in expulsion").

Allowing minors to make choices about their personal health decisions does not impose any requirements or prohibitions upon parents, and therefore does not deprive parents of any constitutional right.  In *Doe v. Irwin*, for example, the Sixth Circuit held that Michigan's establishment of a voluntary birth control clinic, where minors could go with or without parental consent, and which prescribed and distributed contraceptives to minors without parental knowledge or consent, did not violate any constitutional rights of parents.  615 F.2d at 1153.  The Sixth Circuit reached this conclusion because nothing about the establishment of the Center prevented parents from exercising any constitutional right they had to the care, custody, and control of their minor children. Specifically, the Court explained that no constitutional violation had been shown because

15

"[t]here is no requirement that the children of the plaintiffs avail themselves of the services offered by the Center and no prohibition against the plaintiffs' participating in decisions of their minor children on issues of sexual activity and birth control.  The plaintiffs remain free to exercise their traditional care, custody and control over their . . . children."  615 F.2d at 1168.

Here, the State of Minnesota has imposed no compulsory requirements or prohibitions that affect any of Plaintiff's parental rights.  As previously noted, Minnesota Statutes Section 144.341 provides that minors who are "living separate and apart from parents" and who are "managing [their own] personal financial affairs" with the ability to give consent to their own health-related services.  *See* Minn. Stat. § 144.341.  There is no requirement that all minors who live independently must avail themselves of the statute's grant of authority to consent.  Nor does the statute prohibit minors from informing their parents about health-related services, or prohibit parents from participating in the decisions of their minor children to seek such services.  Moreover, Minn. Stat. § 144.341 does nothing to prohibit parents from taking steps that would avoid a situation in which their minor children are living separate and apart.

Contrary to Plaintiff's argument, Minn. Stat. § 144.341 does not terminate her parental rights.  An order terminating parental rights must be issued by a court, and such an order permanently and completely severs the legal parent-child relationship. *See* Minn. Stat. § 260C.317, subd. 1.  Section 144.341, by contrast, merely recognizes that when a minor is living separately from her parents and is managing her own affairs, the right to make certain decisions, including those relating to medical care, belongs to the minor

herself.  Section 144.341 does not deprive Plaintiff of her legal status as a parent.  Under applicable Minnesota law, Plaintiff's parental rights have not been, and cannot be, terminated by any actions of Defendants, including by acting in reliance on E.J.K.'s consent to her own medical treatment pursuant to Section 144.341.

Because the statute does not compel or constrain Plaintiff, she cannot plausibly allege a violation of her constitutional rights.  *See Irwin*, 615 F.2d at 1168; *see also J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 934 (3d Cir. 2011) (holding that parents' liberty interests were not triggered where school district's disciplinary actions "in no way forced or prevented J.S.'s parents from reaching their own disciplinary decision, nor did its actions force her parents to approve or disapprove of her conduct"); *Reardon v. Midland Cmty. Schs.*, 814 F. Supp. 2d 754, 771-72 (E.D. Mich. 2011) (finding no violation of parents' constitutional rights where minor child approached school officials who suggested alternatives and offered to support her decision if she chose to leave her parents' home without informing her parents because "neither was constitutionally obligated to meet [the child's] request for assistance with silence or a cold shoulder" and were not required to "obtain parental consent" to provide the child with counseling); *Curtis*, 652 N.E.2d at 585-86 (holding that program providing minors with free condoms did not violate parents' constitutional rights because program was not compulsory: "students were not required to seek out and accept the condoms, read the literature accompanying them, or participate in counseling regarding their use" and "parents are free to instruct their children not to participate"); *Decker v. Carroll Academy*, 1999 WL 332705 (Tenn. Ct. App. May 26, 1999) (finding Tennessee statute

17

allowing physicians to provide birth control to minors without notifying parents did not

violate parents' constitutional rights because the "Tennessee statute is not compulsory in

nature; the participation of the minor is voluntary, and notification to parents is neither

required nor prohibited.  Physicians are not required to provide birth control to minors

who request and need contraceptives; the statute merely authorizes them to do so.  The

statute does not prohibit a parent from any conduct in the raising of her child, nor does it

require any conduct of a parent.").

In this case, Plaintiff has shown nothing more than that she, "as a mother objects

to" how E.J.K. has exercised her right to make medical decisions on her own behalf

under Minnesota law.  (Complaint ¶ 32.)  That allegation does not demonstrate that the

State compelled E.J.K. or Plaintiff into any course of action.  *See Anspach*, 503 F.3d at

264 (dismissing parents' Section 1983 action because "Plaintiffs cannot maintain a due

process violation when the conduct complained of was devoid of any form of constraint

or compulsion").  Ultimately,

> [t]he real problem alleged by [the parents] is not that the state actors
> *interfered* with [them] as parents; rather it is that the state actors did not
> *assist* [the parents] as parents or affirmatively *foster* the parent/child
> relationship. However, the [parents] are not entitled to that assistance under
> the Due Process Clause.

*Anspach*, 503 F.3d at 266; *see also Harris v. McRae*, 448 U.S. 297, 317-18 (1980)

(finding that the Due Process Clause "does not confer an entitlement to such

[governmental aid] as may be necessary to realize all the advantages of that freedom");

*DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195-96 (1989)

("[The Due Process Clause] forbids the State itself to deprive individuals of life, liberty,

or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.").

Plaintiff's Complaint fails to state a claim for those same reasons. The State has not imposed any constraints or requirements on her action as a parent. It has merely enacted a statute that recognizes the rights of mature minors to obtain medical treatment.

**III.   Plaintiff Failed to Avail Herself of Procedural Safeguards Under Minnesota Law.**

Minnesota law provided Plaintiff with a clear opportunity to provide a home for E.J.K. and thereby to prevent E.J.K. from needing to arrange for her own medical care under Section 144.341.  Plaintiff chose not to avail herself of this opportunity, instead leaving E.J.K. to provide for herself for nearly two years. For this additional reason, Plaintiff cannot now complain that her due process rights have been violated.

Under Minnesota Statutes Chapter 260C, the state's comprehensive statutory scheme to protect the health, safety, and best interests of minor children, Plaintiff could have sought judicial review of E.J.K.'s decision to decline her "offer" of a home.[6] Specifically, if Plaintiff believed that E.J.K. was "absent from the home of a parent . . . without the consent of the parent," or was (or is) a child "whose behavior, condition or environment is such as to be injurious or dangerous to the child," she could have sought protective services and assistance from the county child welfare agency and/or filed and

---

[6]     Despite Plaintiff's repeated recitation that she offered E.J.K. a home, Plaintiff's failure to support E.J.K. and act in E.J.K.'s best interests makes Plaintiff's offer a hollow one, at best.

prosecuted a private CHIPS petition in juvenile court under Minn. Stat. § 260C.141.

Among the many dispositions available to the juvenile court under Minn. Stat.

§ 260C.201 with respect to children who are adjudicated as CHIPS are: an order placing

the child in the parents' home; an order placing the child in foster care; an order placing

the child in the custody of a relative or other suitable adult custodian; an order for

counseling and other supportive services for the child and parent; or, for a child who is 16

years or older, an order to live independently, under supervision that the court considers

appropriate. *See* Minn. Stat. § 260C.201, subd. 1. Had Plaintiff at any time sought the

intervention and assistance of the child welfare agency and/or the juvenile court, she

would have had a full opportunity to address, before a court dedicated to the welfare of

children, the concerns she now voices about E.J.K.'s living arrangements and exercise of

her right to consent to medical care.

      For almost two years, Plaintiff has chosen not to take legal steps available to her

under Minnesota law to object to, modify, or terminate her minor child's living apart

from her parents and managing her own affairs. Rather, Plaintiff now chooses to

castigate Defendants for treating E.J.K. as someone entitled to make her own healthcare

decisions, which Minnesota law allows precisely because Plaintiff has permitted her child

to live apart and manage her own affairs. This Court should not permit Plaintiff to blame

Defendants and hold them responsible because she abdicated her own rights and

responsibilities as E.J.K.'s parent. For these additional reasons, Plaintiff cannot state a

claim for deprivation of due process.

## CONCLUSION

Plaintiff has no legitimate legal basis to maintain this lawsuit against her daughter— who is not a state actor— or against any other defendant.  As discussed above, Plaintiff has not asserted any deprivation of her constitutional rights, and she has no constitutional right to override a mature minor's consent to medical care.  Moreover, Plaintiff's Complaint shows that she did not take advantage of the opportunities provided under Minnesota law that would have allowed her to assert concerns that she now seeks to raise for the first time in this federal lawsuit.  Defendant E.J.K. respectfully asks the Court to dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

Dated:  December 15, 2016                    Respectfully submitted,

*s/ Michael A. Ponto*

Michael A. Ponto, #203944
Martin S. Chester, #031514X
Emily E. Chow, #0388239
Cicely R. Miltich, #0392902
Aaron P. Knoll, #0393066
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
612.766.7000
*Michael.Ponto@faegreBD.com*
*Martin.Chester@faegreBD.com*
*Emily.Chow@faegreBD.com*
*Cicely.Miltich@faegreBD.com*
*Aaron.Knoll@faegreBD.com*

Christopher F. Stoll, Admitted *Pro Hac Vice*
Asaf Orr, Admitted *Pro Hac Vice*
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street, Suite 370
San Francisco, CA  94102
415.392.6257
*CStoll@nclrights.org*
*Aorr@nclrights.org*

**Attorneys for Defendant E.J.K.**

22