**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ANMARIE CALGARO,

      Plaintiff,

v.

ST. LOUIS COUNTY; LINNEA
MIRSCH, individually and in her official
capacity as Interim Director of St. Louis
County Public Health and Human
Services; FAIRVIEW HEALTH
SERVICES, a Minnesota Nonprofit
Corporation; PARK NICOLLET
HEALTH SERVICES, a Nonprofit
Corporation; ST. LOUIS COUNTY
SCHOOL DISTRICT; MICHAEL
JOHNSON, individually and in his official
capacity as principal of the Cherry School,
ST. LOUIS COUNTY SCHOOL
DISTRICT; and J.D.K.,

      Defendants.

Case No. 16-cv-3919 (PAM/LIB)

**DECLARATION OF E.J.K.**

---

I, E.J.K., declare that the following statements are true to the best of my recollection and knowledge:

1.    Because of a strained relationship and difficult environment, I decided to leave the home of my mother, Anmarie Calgaro, in January 2015, when I was 15, and I have not returned to live in her home since then.

2.    When I first moved out, I lived with my father, Justin Karl, in St. Cloud. Unfortunately, several months later, my father became incarcerated, which forced me to

1

find another place to stay. I did not want to return to my mother's home. Instead, I stayed with various friends and family members.

3.      In July 2015, I started living with my grandmother. While at my grandmother's, I was attending school and working at night. Having a job allowed me to be financially independent.

4.      A few months later, in October 2015, I moved back to Hibbing to live with a close friend of mine. Shortly after my move, I reenrolled in school, applied for medical insurance through MNsure, and got a job. I have since moved into my own apartment and continue to keep up with my education. I also have a full-time job that covers all of my monthly expenses.

5.      After securing health insurance, I started seeking professional care for the distress I was experiencing related to my gender. Although I have known that I am a girl since I was a child, I repressed that part of myself because of the response of my parents and community. However, it started to reemerge several months before my move to Hibbing. I soon realized that it would be important to get the advice of medical professionals who are knowledgeable about transgender youth and gender dysphoria.

6.      Based on the recommendations of my health care providers, I made the decision to undergo medical treatment for my gender dysphoria. As part of that treatment, I started using my current name and took medications prescribed by my doctor that would bring my body into closer alignment with gender identity.

7.      Before I consented to any of these treatments, I spoke with my providers about all the available treatment options and discussed the short- and long-term effects of

2

the medication, including risks and benefits. I relied on all that information when I made the decision to consent to the treatment I am currently receiving. As I understand it, all of the treatment that I have received are consistent with the standards of care for gender dysphoria.

8.     I was not pressured in any way by my providers to consent to this treatment. My providers had no involvement in my decision not to involve my mother in my health care decisions.

9.     None of the other defendants has ever interfered in the relationship I have with my mother or tried to control any aspect of that relationship.

10.     Although I have seen and spoken with my family sporadically since leaving in January 2015, I have not returned to live in my mother's home. I have been living independently from my family, managing my finances for over 18 months, and I do not currently have any intention of returning to live with my family.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 5, 2017                              /s/ E.J.K.
                                                                    E.J.K.

3

us.109680807.01