UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Anmarie Calgaro,

      Plaintiff,

v.

St. Louis County, Linnea Mirsch,
Fairview Health Services,
Park Nicollet Health Services,
St. Louis County School District,
Michael Johnson, and E.J.K.[1],

      Defendants.

Case No. 16-cv-3919 (PAM/LIB)

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Anmarie Calgaro's Motion for Summary Judgment, Defendants St. Louis County's and Linnea Mirsch's Motions for Judgment on the Pleadings and Summary Judgment, and Defendants Park Nicollet Health Services', Fairview Health Services', St. Louis County School District's, Michael Johnson's, and E.J.K.'s Motions to Dismiss. For the following reasons, Defendants' Motions are granted and Calgaro's Motion is denied.

**BACKGROUND**

E.J.K. is a 17-year-old transgender youth who identifies as female. (Compl. (Docket No. 1) ¶¶ 18, 32, 104, Ex. C.) She will turn 18 in less than two months. (Id. ¶ 3.) Calgaro is E.J.K.'s biological mother and has sole physical and joint legal custody of E.J.K. (Id. ¶¶ 3, 44.)

---

[1] Although referred to as J.D.K. in Calgaro's Complaint, the Court uses the name, initials, and pronouns consistent with E.J.K.'s female gender identity.

Sometime in 2015, E.J.K. moved out of Calgaro's home in St. Louis County, Minnesota and moved in with her biological father in St. Cloud. (Id. ¶¶ 3, 53.) Shortly thereafter, E.J.K. moved out of her father's home and began living with various family and friends. (Id. ¶ 53.) Since moving out of her father's home, E.J.K. has refused to move back in with Calgaro. (Id.) Calgaro claims that she has always offered a home to E.J.K. (Id. ¶ 50.)

E.J.K. currently lives on her own in St. Louis County. (Id. ¶ 18.) She attends the Cherry School in the St. Louis County School District (the "School District") and enrolled herself in post-secondary educational opportunities at a local college. (Id. ¶ 14.) On June 29, 2015, E.J.K. consulted a lawyer with Mid-Minnesota Legal Aid who provided her with a letter that concluded she was legally emancipated under Minnesota law. (Compl. Ex. A.) E.J.K. has never obtained a court order of emancipation. (Id. ¶ 38.)

Sometime before January 15, 2016, Park Nicollet and Fairview began providing E.J.K. with medical treatment for a gender transition to the female gender. (Id. ¶¶ 10, 12, Ex. C.) Calgaro alleges that St. Louis County is providing E.J.K. with general government assistance and paying for these medical services. (Id. ¶¶ 54, 102.) Sometime in 2016, Calgaro requested that Fairview and Park Nicollet provide her with E.J.K.'s medical records, but they refused. (Compl. ¶¶ 113, 114, 118.) Also in 2016, Calgaro requested that the School District allow her to participate in E.J.K.'s educational decisions and to have access to E.J.K.'s educational records, but the School District refused. (Id. ¶¶ 134, 135.)

2

On November 16, 2016, Calgaro filed this lawsuit against seven Defendants: (1) St. Louis County; (2) Linnea Mirsch, individually and in her official capacity as Interim Director of St. Louis County Public Health and Human Services; (3) Fairview; (4) Park Nicollet; (5) the School District; (6) Michael Johnson, individually and in his official capacity as Principal of the Cherry School ("Principal Johnson"); and (7) E.J.K. (collectively, "Defendants"). Calgaro is suing Defendants under 42 U.S.C. § 1983 for allegedly violating her Fourteenth Amendment procedural due process rights. Calgaro alleges that Defendants terminated her constitutionally protected parental rights without due process by determining E.J.K. emancipated without notifying her, providing E.J.K. with medical services and government assistance without Calgaro's consent, and refusing to provide Calgaro with E.J.K.'s medical, governmental, and educational records.

Twelve days after filing a Complaint, Calgaro filed her Motion for Summary Judgment. Park Nicollet, Fairview, the School District, Principal Johnson, and E.J.K. each subsequently filed Motions to Dismiss. St. Louis County and Mirsch also filed a Motion for Judgment on the Pleadings and a Motion for Summary Judgment.

**DISCUSSION**

**A.     Motions to Dismiss and the Motion for Judgment on the Pleadings**

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id. When evaluating a motion to dismiss, the Court must accept factual allegations as true, Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012), but it need not give effect to those that simply assert legal conclusions, McAdams v. McCord, 584 F.3d 1111, 1113 (8th Cir. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim. Iqbal, 556 U.S. at 678. The same standard that applies to a motion to dismiss under Rule 12(b)(6) applies to a motion for judgment on the pleadings under Rule 12(c). Haney v. Portfolio Recovery Assocs., L.L.C., 837 F.3d 918, 924 (8th Cir. 2016) (per curiam).

### 1. Emancipation

Throughout her 229-paragraph Complaint, Calgaro repeatedly alleges that Defendants "determined [E.J.K.] emancipated." (See, e.g., Compl. ¶ 138.) This allegation is distracting for two reasons. First, Defendants legally cannot emancipate E.J.K. In Minnesota, emancipation is an act of the parent and need not be in writing or in express words. In re Fiihr, 184 N.W.2d 22, 25 (Minn. 1971) (citation omitted). "Whether a child has been emancipated must be determined largely upon the peculiar facts and circumstances of each case and is ordinarily a question for the jury." Id. Calgaro does not dispute this. (See Compl. ¶ 40 ("Minnesota courts recognize that [E.J.K.] as a minor child is not emancipated until a state court decides the minor child [E.J.K.] is emancipated.").) Calgaro also admits that E.J.K. has not obtained a court order of emancipation. (Id. ¶ 38.) Defendants therefore did not emancipate E.J.K. and Calgaro continues to have sole physical and joint legal custody of E.J.K. Second, even

assuming Defendants determined E.J.K. emancipated—as the Court must do at this stage of the litigation—Defendants' emancipation determinations did not terminate Calgaro's parental rights. Only a court order can do so. Absent that, Calgaro's parental rights over E.J.K. remain intact. The Court will therefore not further entertain Calgaro's characterization of Defendants' actions as "determining E.J.K. emancipated," except when necessary to address one of Calgaro's claims against St. Louis County.

### 2. Fairview and Park Nicollet

To state a claim under § 1983, Calgaro must establish that Fairview and Park Nicollet deprived her of a right secured by the Constitution or laws of the United States and that the deprivation was committed under color of state law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49 (1999). Calgaro alleges that Fairview and Park Nicollet deprived her of her constitutionally protected parental rights without due process by providing E.J.K. with medical services without Calgaro's consent and refusing to provide Calgaro with E.J.K.'s medical records. (Compl. ¶¶ 11, 13, 188, 197.) Fairview and Park Nicollet argue that they cannot be held liable under § 1983 because they did not act under color of state law. Fairview and Park Nicollet are correct.

"Section 1983 secures most constitutional rights from infringement by governments, not private parties." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). But private parties may be held liable when they act under color of state law. Id. (citation omitted). A private party acts under color of state law when they are a "willful participant in joint activity with the state."

5

Magee v. Trustees of Hamline Univ., Minn., 747 F.3d 532, 536 (8th Cir. 2014) (quotations and citation omitted).

Fairview and Park Nicollet did not willfully participate in any joint activity with the state. Fairview and Park Nicollet are private, non-profit corporations that provide medical services to the public. Merely because they are extensively regulated by the state and receive state funding does not mean that they willfully participate in joint activity with the state. See Alexander v. Pathfinder, Inc., 189 F.3d 735, 740 (8th Cir. 1999). Likewise, merely because Fairview and Park Nicollet provided E.J.K. with medical services under Minn. Stat. § 144.341 does not mean they willfully participated in joint activity with the state. See Sullivan, 526 U.S. at 52 ("Action taken by private entities with the mere approval or acquiescence of the State is not state action."). Because Fairview and Park Nicollet did not willfully participate in joint activity with the state, they did not act under color of state law. Calgaro therefore fails to state a claim against Fairview and Park Nicollet upon which relief can be granted.

### 3. The School District

Calgaro alleges that the School District deprived her of her constitutionally protected parental rights by not allowing Calgaro to participate in E.J.K.'s educational decisions and denying her access to E.J.K.'s educational records. (Compl. ¶¶ 14, 76, 134-38.) The School District argues that Calgaro has failed to plausibly allege that the execution of a School District policy or custom caused the deprivation of Calgaro's parental rights. The School District is correct.

Local governmental bodies like the School District "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978). It is only when "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Id.

Calgaro fails to provide any facts that the School District executed a policy or custom that deprived Calgaro of her parental rights without due process. Instead, Calgaro merely states in conclusory fashion that "[t]he School District's policies, customs, practices, or procedures (or lack of procedures), acting under the color of state law, were the moving force behind the constitutional violations." (Compl. ¶ 15.) But the "mere invocation of the words 'policies' and 'customs' is insufficient to plead a Monell claim." Rickmyer v. Browne, 995 F. Supp. 2d 989, 1030 (D. Minn. 2014) (Nelson, J.). Calgaro therefore fails to state a claim against the School District upon which relief can be granted.

### 4. Principal Johnson

Calgaro alleges that Principal Johnson also deprived her of her constitutionally protected parental rights by not allowing Calgaro to participate in E.J.K.'s educational decisions and denying her access to E.J.K.'s educational records. (Compl. ¶¶ 76, 136, 137.) Principal Johnson argues that he is entitled to qualified immunity. Principal Johnson is correct.

Qualified immunity applies unless the government official's conduct "violated a clearly established constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009).

The purpose of qualified immunity is to "give government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011).

The Eighth Circuit has explicitly left open the question "whether and to what extent the fundamental liberty interest in the custody, care, and management of one's children mandates parental access to school records." Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 819 (8th Cir. 2011). The only other circuit to have ruled on this issue has held that a noncustodial parent does not have a protected liberty interest in receiving their children's school records. Crowley v. McKinney, 400 F.3d 965, 968-71 (7th Cir. 2005). Because this existing precedent does not place the constitutional question "beyond debate," Principal Johnson is entitled to qualified immunity. Ashcroft, 563 U.S. at 741.

### 5. St. Louis County

Calgaro alleges that St. Louis County deprived her of her constitutionally protected parental rights without due process by refusing to provide Calgaro with E.J.K.'s governmental records, providing E.J.K. with general government assistance without Calgaro's consent, and providing E.J.K. with medical assistance without Calgaro's consent. St. Louis County has moved for judgment on the pleadings regarding the general government assistance and governmental records claims. St. Louis County argues that Calgaro has failed to allege that a St. Louis County policy or custom deprived her of her parental rights without due process. St. Louis County is correct, but not exactly for the reasons it argues.

8

Like the School District, St. Louis County "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694. It is only when "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Id. Furthermore, when a municipality is acting under compulsion of state or federal law, "it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." Bethesda Lutheran Homes & Servs., Inc. v. Leean, 154 F.3d 716, 718 (7th Cir. 1998). Although the Eighth Circuit has not decided whether to adopt this common-sense limitation on municipal liability under § 1983, see Slaven v. Engstrom, 710 F.3d 772, 781 n.4 (8th Cir. 2013), every circuit to have ruled on this issue has done so. See Vives v. City of New York, 524 F.3d 346, 353 (2d Cir. 2008) (collecting and analyzing cases).

St. Louis County provided E.J.K. with general government assistance under Minn. Stat. § 256D.03, which provides that every county "shall provide general assistance to persons residing within its jurisdiction who meet the need requirements of sections 256D.01 to 256D.21." Minn. Stat. § 256D.03, subd. 1. St. Louis County argues that because it is required to provide general government assistance to E.J.K. under this statute, it is the policy of the state of Minnesota, rather than St. Louis County, that allegedly deprived Calgaro of her constitutionally protected parental rights without due process. But the state does not require St. Louis County to provide E.J.K. with general assistance.

Minn. Stat. 256D.03 requires St. Louis County to provide E.J.K. with general government assistance if she meets the need requirements of sections 256D.01 to 256D.21. E.J.K. meets those need requirements if she does not have adequate income and is "a child under the age of 18 who is not living with a parent, stepparent, or legal custodian, and only if: the child is legally emancipated or living with an adult with the consent of an agency acting as a legal custodian . . . ." Minn. Stat. § 256D.05, subd. 1(a)(10). For purposes of this clause:

> 'legally emancipated' means a person under the age of 18 years who: (i) has been married; (ii) is on active duty in the uniformed services of the United States; (iii) has been emancipated by a court of competent jurisdiction; or (iv) is otherwise considered emancipated under Minnesota law, and for whom county social services has not determined that a social services case plan is necessary, for reasons other than the child has failed or refuses to cooperate with the county agency in developing the plan.

Id. As previously discussed, E.J.K. has not been emancipated by a Minnesota court. And the other three ways E.J.K. could be considered legally emancipated under the statute are likewise inapplicable. Thus, it is not the policy contained in the state law that is responsible for the alleged constitutional deprivation, rather it is St. Louis County's decision to provide E.J.K. with general government assistance, although not required to do so, that allegedly deprived Calgaro of her constitutionally protected parental rights without due process.

This technicality, however, does not save Calgaro's general assistance claim against St. Louis County. Calgaro still fails to allege any specific facts that St. Louis County has a policy or custom that provides non-emancipated minors with general government assistance in contradiction of state law. For example, Calgaro does not

allege that St. Louis County has ever provided general government assistance to a non-emancipated minor before doing so with E.J.K. Nor does Calgaro allege that St. Louis County has ever provided any individual with government assistance in contradiction with state law. Instead, Calgaro once again merely alleges in conclusory fashion that "St. Louis County's policies, customs, practices, or procedures (or lack of procedures), acting under the color of state law, were the moving force behind the constitutional violations asserted in this Complaint." (Compl. ¶ 5.) Such a conclusory allegation is insufficient to support Calgaro's general government assistance claim against St. Louis County. See Rickmyer, 995 F. Supp. 2d at 1030. Calgaro's claim concerning St. Louis County's refusal to provide her with E.J.K.'s governmental records fails for the same reason.

### 6. Mirsch

Calgaro fails to state a claim against Mirsch upon which relief can be granted because Calgaro fails to allege that Mirsch was personally involved in depriving Calgaro of her parental rights without due process. To establish Mirsch's personal liability under § 1983, Calgaro must allege "specific facts of personal involvement in, or direct responsibility for, a deprivation of [her] constitutional rights." Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quotations and citation omitted). Calgaro utterly fails to do this.

Calgaro mentions Mirsch only twice in her Complaint. (Compl. ¶¶ 8-9.) Calgaro alleges that Mirsch is the interim director of the St. Louis County Health and Human Services Department and that she is the final decision- and policy-maker in the department. (Id. ¶ 8.) Calgaro also alleges that Mirsch is an agent, representative, or

11

employee of the department, and as such is acting under color of state law. (Id. ¶ 9.) These two general allegations do not come close to alleging specific facts of Mirsch's personal involvement in, or direct responsibility for, a deprivation of Calgaro's constitutional rights. Calgaro therefore fails to state a claim against Mirsch upon which relief can be granted.

       7.      **E.J.K.**

Calgaro stops short of making the absurd argument that E.J.K. deprived Calgaro of her parental rights without due process while acting under color of state law. Calgaro merely argues that E.J.K. is a required party who must be joined in the action because E.J.K. "claims an interest relating to the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). Although E.J.K. likely is a required party under Rule 19, because Calgaro's claims against all other Defendants fail, any claims she might raise against E.J.K. are likewise dismissed.

**B.**    **Motions for Summary Judgment**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotations

omitted). Where the moving party makes such a showing, the burden shifts to the nonmoving party, who must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials and must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### 1. St. Louis County

St. Louis County moved for summary judgment on Calgaro's allegation concerning government assistance of medical payments because the state of Minnesota, not St. Louis County, provided E.J.K. with that assistance. (See Waldriff Decl. (Docket No. 39) ¶¶ 6-7.) Calgaro does not dispute this. In fact, Calgaro utterly fails to respond to St. Louis County's Motion for Summary Judgment. (See generally Pl.'s Opp'n Memo. (Docket No. 65).) This allegation is therefore deemed abandoned and summary judgment is appropriate. See Truong v. Hassan, No. 13cv2947, 2015 WL 2341979, at *7 (D. Minn. May 14, 2015) (Montgomery, J.) (considering state-law claims abandoned after plaintiff failed to respond in his opposition memorandum to defendant's summary judgment motion).

### 2. Calgaro

Because her claims are meritless, Calgaro is not entitled to summary judgment.

**CONCLUSION**

Calgaro has failed to plausibly allege any § 1983 claims against Defendants. Accordingly, **IT IS HEREBY ORDERED that**:

1. Calgaro's Motion for Summary Judgment (Docket No. 6) is **DENIED**;

2. Park Nicollet's Motion to Dismiss (Docket No. 15) is **GRANTED**;

3. E.J.K.'s Motion to Dismiss (Docket No. 24) is **GRANTED**;

4. Fairview's Motion to Dismiss (Docket No. 28) is **GRANTED**;

5. The School District's and Principal Johnson's Motion to Dismiss (Docket No. 31) is **GRANTED**;

6. St. Louis County's and Mirsch's Motion for Judgment on the Pleadings and Motion for Summary Judgment (Docket No. 34) are **GRANTED**; and

7. Calgaro's Complaint (Docket No. 1) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 23, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge